**Paul ADLER, Petitioner,**

v.

**Frederick MENIFEE, Respondent.**

**No. 03 CIV. 9146(CLB).**

United States District Court,
S.D. New York.

Nov. 21, 2003.

---

James B. Comey, United States Attorney, By Allison D. Penn, Assistant United States Attorney, Southern District of New York, New York, NY, for Plaintiff.

Murray Richman, Esq., Bronx, NY, for Defendant.

BRIEANT, District Judge.

By a letter motion dated November 7, 2003 and received in this Court on Novem-

ber 12, 2003, Mr. Paul Adler, a federal prisoner, seeks an Order from this Court "compelling the Bureau of Prisons to disregard the 'new so-called 10% Rule' that limits the period of time a federal inmate may spend in a [Community Confinement Center] to 10% of his total sentence". The Government opposition papers were filed on November 18, 2003. The issue presented is purely one of law.

The Government's papers in opposition point out, correctly, as was noted previously by this Court on the record in a prior § 2255 proceeding involving Mr. Adler, this issue may only be raised by a petition pursuant to 28 U.S.C. § 2241. The Court has directed that the letter motion be so treated and that a file be opened under the above caption.

The facts set forth are all a matter of record. Community Corrections Centers (CCC) are maintained by the Bureau of Prisons. They are used to place a prisoner in Community confinement in a proper case, and also to afford all prisoners a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. While so incarcerated, a prisoner may be gainfully employed during the daylight hours and may pursue opportunities for employment. Such placement is highly desirable from the point of view of the prisoner and beneficial to society because it eases re-entry of prisoners at the conclusion of their sentence and is less expensive to operate then a high security prison.

There are two means of entry by a prisoner into a CCC. There is "Front End" entry where, often in response to a recommendation of the sentencing judge, and sometimes solely because of the nature of the crime involved and the brief length of the sentence, the Bureau of Prisons has exercised discretion to place an offender in a CCC at the outset of his sentence. The authority to do this is found in 18 U.S.C. § 3621(b). "Back End" entry as contrasted to Front End entry to a CCC is authorized and regulated by 18 U.S.C. § 3624(c) and occurs at the end of a prisoner's sentence. That statute provides in relevant that:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment *spends a reasonable part, not to exceed six months, of the last ten percentum of the term to be served* under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoners's re-entry into the community. (emphasis added)

For many years the Bureau of Prisons (BOP) had followed a practice of placing prisoners in CCC's for approximately the last six months of their sentences, regardless of the length of their sentences and without regard to the 10% limitation in the statute. Mr. Adler was sentenced in this case on July 10, 2002. An amended judgment in this case was filed February 26, 2003 and Mr. Adler surrendered to the designated institution at Otisville, New York, where he now is, on October 2, 2002 for a term of imprisonment of nineteen months.

On December 13, 2002, the Attorney General's office issued a memorandum opinion dated December 13, 2002 (Exhibit D to Penn Declaration) entitled "Bureau of Prison's Practice of Placing in Community Confinements Certain Offenders Who Have Received Sentences of Imprisonment." Familiarity of the reader with that document is assumed. The opinion by its terms dealt with two separate issues, the Front End entry to a CCC under § 3261(a) and Back End entry as authorized by 18 U.S.C. § 3624(c). The issue of Front End entry to a CCC, presents fair ground for litigation and is not relevant to

this case. Instead, with respect to Mr. Adler, the issue of whether he has a right to a Back End entry to a CCC near the end of his sentence but before he has reached the 90% mark is at issue.

Under date of December 16, 2002 (Exhibit E to Penn Declaration), the Deputy Attorney General, after advising the BOP that the policy of "accommodating judicial requests (and occasionally acting on its own), by the Bureau of Prisons to place low-risk non-violent offenders with short terms of imprisonment in a CCC even where such placement expressly contravenes the United States Sentencing Guidelines" is unlawful, an issue which is not involved in this case, went on to address the issue of Back End entry as follows:

> The OLC opinion additionally notes, that while BOP does have limited statutory authority in 18 U.S.C. § 3624(d) to transfer an offender to a CCC prior to his release so as to "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into this community", there are firm restrictions on such transfers. Specifically, the transfer may not exceed the lesser of (1) the last ten percent of the sentence imposed on the offender, i.e. the period of time in which the offender was committed to the custody of BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding these time limitations.

After noticing that the policy has a potentially disproportionate and inappropriately favorable impact on so-called 'white collar criminals' and observing the BOP's current placement practices run the risk of eroding public confidence in the Federal Judicial System, the Department told BOP to stop. Thereafter, on December 30, 2002, the inmate population at Otisville was so informed by Warden Frederick Menifee (Exhibit F). On January 29,

2003, Mr. Adler was informed by the Bureau of Prisons that his CCC Recommendation would be issued on his ten percent date, then believed to be "12/03". On March 26, 2003, he was informed that December 29th would be his date for recommendation to a CCC and thereafter the date was changed to January 6, 2004.

Petitioner's application to this Court was concededly induced by the recent Orders and Decisions of Judge Wood of this District (*Greenfield v. Menifee*, 03 Civ. 8205, decided October 30, 2003) and that of Judge Glasser in the Eastern District (*Cioffoletti v. Federal Bureau of Prisons*, 03 Civ. 3220, decided November 6, 2003). Because Mr. Adler's sentence was nineteen months, his period of confinement in the CCC under the statute cannot exceed 1.9 months. The new policy was attacked on numerous grounds including the *ex post facto* prohibition, a claimed violation of the Administrative Procedures Act and as a due process violation, as well as equitable estoppel and an issue of statutory interpretation, all discussed below.

If, on any of the theories presented by Petitioner, Mr. Adler was entitled to be recommended for CCC placement for the last six months of his sentence, he would be there now. Prior to the intervention of the Attorney General, persons situated as Mr. Adler finds himself would have been so placed long before the remaining amount of their sentence was reduced to ten percent.

### Discussion

■ The Government correctly notes in its responsive papers that the letter motion submitted by Mr. Adler is "procedurally deficient". The only way this issue can be raised is by Petition pursuant to 28 U.S.C. § 2241, naming Warden Menifee as a Defendant, under a separate docket number. Were Mr. Menifee to have been named and served, he would be appearing

by the United States Attorney in this District, presenting the same issues and defenses presently offered. Because liberty is at stake, the Court should not be delayed by such technicalities, and treats the matter as a Petition filed under § 2241 of Title 28.

██ As a second defense prior to reaching the merits, the Government argues that this Court lacks jurisdiction because Petitioner is apparently seeking a reconsideration of the Court's "previous denial of relief". On July 31, 2003, this Court issued a Memorandum and Order denying Mr. Adler's Petition brought pursuant to 28 U.S.C. § 2255. A Notice of Appeal was duly filed in that case by Mr. Adler and the Appeal remains pending undecided in the United States Court of Appeals for the Second Circuit. While this Court agrees that the filing of a Notice of Appeal confers jurisdiction on the Court of Appeals and divests the District Court of its control over those aspects of the case involved in the Appeal (quoting from *Griggs v. Provident Consumer Discount Company*, 459 U.S. 56, 58–59, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)), cited in the Governments's Brief on page 7, the present aspect of the case clearly is not involved in that Appeal. This claim cannot be raised pursuant to 28 U.S.C. § 2255 and indeed it was not. Accordingly, this Court concludes that it has jurisdiction over the merits of the application and should resolve the issues presented, notwithstanding that Mr. Adler is an appellant in the prior proceedings.

The new Policy of the BOP with relation to Front End entry to a CCC pursuant to 18 U.S.C. § 3621(b) is not before this Court and presents issues unrelated to those involved in Back End entry to a CCC. As to Front End entry under 18 U.S.C. § 3621(b), the issue appears to be *sub judice* in the Court of Appeals for the Second Circuit (*Floyd Arthur v. United States*, E.D.N.Y. Docket 00 Cr. 448, argued November 17, 2003) and there are serious grounds to believe that the new policy may be unlawful.

██ However as to Back End entry, the plain meaning of the statute and the overwhelming majority of the decided cases prevent this Court from granting the relief requested. Back End entry is clearly controlled by 18 U.S.C. § 3624(c) previously quoted and the plain meaning of that statute is obvious. For many years the Bureau of Prisons appears to have intentionally disregarded the plain meaning of § 3624(c) and, to the extent facilities were available and deemed suitable, has been placing prisoners in CCC for the last six months of their sentence without regard to the ten percent statutory limitation.

No estoppel exists against the Government or the Bureau of Prisons by reason of this long standing and probably beneficial practice. Nobody has a vested interest in violation of the law no matter how long continued. Similarly, there is no issue involving the Administrative Procedures Act. The opinion of the Deputy Attorney General is no more than an interpretation (See 5 U.S.C. § 553(b)(3), and *Benton v. Ashcroft*, 273 F.Supp.2d. 1139, 1146 (S.D.Cal.2003)) to the effect it simply states the obvious, that this particular emperor had no clothes, and the remedy, if any, lies with the Congress. Because there is no change in the plain meaning of the statute, there is no violation of the *ex post facto* clause.

Although the new 10% policy was invoked by the BOP on December 30, 2002, no circuit court has spoken on the issue of Back End entry, and the same appears to be true as to Front End entry, although, as noted earlier, the issue is *sub judice* in this Circuit in *Arthur*, which may not be decided prior to Mr. Adler's scheduled transfer to a CCC under the new policy.

However, the overwhelming authority in district court decisions throughout the country, both in number of cases and the weight of judicial reasoning, seems to favor the Government position, at least as to Back End entry. Like Judge Lasker of this Court, in *Kennedy v. Winn*, D. Mass (by designation), decided July 9, 2003, this Court concludes, regrettably, that this Petitioner is entitled to no relief. Judge Lasker held:

> Kennedy alleges that on December 20, 2002 the Bureau of Prisons (BOP) informed Warden Winn of what Kennedy says the BOP called a "procedural change" relative to "pre-release programming CCC designations." The change limited time served in a CCC to 10% of the term to be served, not to exceed six (6) months. As a result of the alleged change, Kennedy states that on December 24, 2002, he was informed that his date of transfer to Coolidge House would be July 30, 2003 rather than March 27, 2003.
>
> Kennedy alleges that it was a violation of his rights to apply, what he alleges to have been a new policy, retroactively to modify his sentence.
>
> Kennedy relies on the decisions in this court by Judge Ponsor in *Frank Iacaboni v. U.S.*, 251 F.Supp.2d 1015 and *Monahan v. Winn*, 276 F.Supp.2d 196 (2003), by Judge Gertner, which vacate a change of a BOP policy on the grounds that (1) the change in those cases was based on an erroneous interpretation of the controlling statute, (2) the change failed to meet the requirements of the Administrative Procedure Act (APA), and (3) the change could not legally be applied retrospectively.
>
> It is apparent from the language of the statute, however, that to set the halfway house date six (6) months ahead of the release date in Kennedy's case was a mistake because it exceeded the 10% maximum period of halfway house residence permitted under the statute, the language of which specifies that such halfway house residents should be in an amount "not to exceed 6 months, *of the last 10 per centum of the term to be served.*" (18 U.S.C. § 3624(c)). (Emphasis added).
>
> On the basis of the analysis above, I conclude that the revision of Kennedy's halfway house sentence was an appropriate correction of a mistake originally made in applying the controlling language of section 3624(c).
>
> It is, of course, regrettable that a prisoner was lead to believe that he would be released from full imprisonment on a certain date only to be told later that that imprisonment would be continued for four (4) months. It is understandable that under the circumstances the prisoner was aggrieved and believed that his rights had been violated.
>
> Nevertheless, for the reasons stated above, the petition must be dismissed.

Other cases taking the same view as Judge Lasker include *Ferguson v. Manco* (Judge Amon, E.D.N.Y., February 7, 2003), (a Front End entry case, upholding new policy in its entirety); *Rothberg v. Winn* (Judge Stearns, D. Mass., October 10, 2003) (Back End entry case, distinguishing cases involving Front End entry; Court holds "I agree with Judge Lasker that the BOP's prior interpretation of Section 3264(c) was a mistake and that a Constitutional violation cannot arise from the correction of an erroneous interpretation of an otherwise valid law", citing *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) and *OPM v. Richmond*, 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)); *United States v. Mikutowicz*, 2003 WL 21857885

(D.Mass., August 6, 2003), (Zobel, J.) (Back End entry).

The two *contra* decisions relied on by Petitioner include *Cioffoletti v. Federal Bureau of Prisons,* E.D.N.Y., November 6, 2003, Glasser, J. In this Back End entry case, after an extensive discussion of frustrated expectations concerning Front End entry under § 3621(b), not applicable here, the Court held in reliance on other reported Front End entry district court decisions that the Attorney General's Memorandum which precipitated the issue, was "wanting on a variety of grounds". The Court adopted the reasoning of a number of Front Entry cases, holding that "because I find the conclusions reached and the reasoning which led to those conclusions compelling, I adopt and follow them. To do more would be an exercise in creative rewriting and a pretense of originality." With due respect to the distinguished author, *Ciofolletti* conflates two different types of entry into the CCC, effected under two separate statutes.[1] As Judge Lasker has so clearly pointed out, this is impermissible.

The second decision relied on by Petitioner is *Greenfield v. Menifee,* decided by Judge Wood of this district on October 30, 2003. *Greenfield* does hold, apparently as a matter of statutory construction that "the BOP's authority pursuant to § 3621(b) to determine the petitioner's place of imprisonment includes the authority to place a prisoner in a CCC and that § 3624(c) does not restrict the BOP's authority in that regard at all." This Court regards it as a novel method of statutory construction to use the general assignment of prisoners power granted in one statute to nullify an express restriction imposed on that power by another act of Congress limited to the Back End entry of prisoners into a CCC near the end of their sentences. No authority is cited for the reliance placed on such a canon of construction, if its exists, and the issue of *Chevron* deference, which would then become implicated, is dismissed with a statement that "BOP was coerced into changing its policy by the Office of Legal Counsel". Since both the BOP and the Office of Legal Counsel are parts of a single agency, the Department of Justice, it is difficult to see how the Department of Justice can coerce itself, if indeed that happened. The Attorney General is the head of the entire department.

This Court concludes that Mr. Adler is not entitled to the relief sought, in light of the plain meaning of Section 3624(c).

The Clerk shall file a final Judgment that all relief shall be denied. Because liberty is at stake and the result, in Judge Lasker's words, regrettable, this Court hereby issues a Certificate of Appealability extending to all issues of law raised in the Petition.

SO ORDERED.

---

1. The cases incorporated by reference in the order listed, are *Culter v. United States,* 241 F.Supp.2d 19 (D.D.C.2003), which is a Front Entry case as are *Iacaboni v. United States,* 251 F.Supp.2d 1015 (D.Mass. March 20, 2003); *Ashkenazi v. United States,* 246 F.Supp.2d 1 (D.D.C.2003), vacated as moot, 346 F.3d 191 (D.C.Cir., October 14, 2003); *Howard v. Ashcroft,* 248 F.Supp.2d 518 (M.D.La.2003); *Byrd v. Moore,* 252 F.Supp.2d 293 (W.D.N.C.,2003); *Tipton v. Federal Bureau of Prisons,* 262 F.Supp.2d 633 (D.Md. 2003) and *United States v. Serpa,* 251 F.Supp.2d 988 (D.Mass.2003).