**Michael L. SERAFINI, Petitioner**

v.

**D. Scott DODRILL, in his Official Capacity as Warden of USP Lewisburg, Respondent**

No. CIV.A.3:CV–04–311.

United States District Court, M.D. Pennsylvania.

Feb. 23, 2004.

Michael L. Serafini, Lewisburg, PA, pro se.

Bruce D. Brandler, U.S. Attorney's Office, Harrisburg, PA, for Respondent.

### MEMORANDUM

VANASKIE, Chief Judge.

This habeas corpus proceeding under 28 U.S.C. § 2241 began on January 5, 2004, when *pro se* petitioner Michael L. Serafini filed in his underlying criminal cases a document entitled, "PETITION FOR HOME DETENTION AND IMMEDIATE HALF–WAY HOUSE PURSUANT TO 18 U.S.C. § 3624(c)." In this petition, Mr. Serafini essentially claimed that he was entitled to a transfer by the Federal Bureau of Prisons ("BOP") to a community corrections center ("CCC"), or half-way house, when there were six (6) months remaining on his prison term, and that he will be entitled to placement in home detention for the final ten percent of his prison term.

The undisputed facts pertinent to this claim are as follows:

- On June 6, 2002, Mr. Serafini was sentenced by this Court to a prison term of 27 months.

---

- On July 8, 2002, Mr. Serafini surrendered for commencement of service of his sentence.
- With credit for good conduct time, Mr. Serafini's projected release date is June 21, 2004.
- The BOP has assigned Mr. Serafini a "Prerelease Preparation Date," also known as the "Six–Month/10% Date," of April 12, 2004.
- Mr. Serafini has been approved for community corrections center placement at the Catholic Social Services facility in Scranton, Pennsylvania on April 14, 2004.
- The BOP did not consider Mr. Serafini eligible for placement in a CCC before he reached the 90% point of his effective prison term.

Because Mr. Serafini had less than six (6) months remaining on his prison term when he filed his petition, the Government was directed to respond to it on an abbreviated basis. The Government's response, filed on January 22, 2004, challenged the justiciability of the *pro se* petition and also asserted that the BOP decision to defer Mr. Serafini's transfer to a CCC until the 90 percent point of his sentence was an appropriate exercise of discretion to which this Court must defer.

On February 2, 2004, Mr. Serafini filed a reply to the Government's response, making clear that the basis of his claim was that the BOP had explicitly declined to exercise discretion to make a CCC placement for more than the last 10% of his prison term. He claimed that the BOP had the authority to place him in a CCC for the last six months of his term of incarceration.

The Government does not dispute the fact that it is now BOP policy that inmates with relatively short prison terms are eligible for placement in a CCC only for the last 10% of their prison term, but not to exceed six months. The BOP policy is predicated upon a Department of Justice determination that a CCC placement prior to the 90 percent point of the prison term is beyond the authority of the BOP. In his reply submission, Mr. Serafini made clear for the first time that he was contesting the validity of the BOP policy determination that it lacked discretion to place him in a CCC for more than the remaining 10% of his prison term.

In an Order dated February 11, 2004, the Clerk of Court was directed to treat this matter as a habeas corpus proceeding under 28 U.S.C. § 2241, and the Government's challenges to the justiciability of the issue presented by Mr. Serafini were rejected.[1] As to the merits, the February 11th Order held that Mr. Serafini had no entitlement to CCC placement or home detention at any point of time during his prison sentence, citing *Gambino v. Gerlinski*, 96 F.Supp.2d 456, 459–60 (M.D.Pa. 2000), *aff'd*, 216 F.3d 1075 (3d Cir.2000) (unpublished table opinion). The February 11th Order also noted, however, that the dispositive question here is not whether Serafini has an entitlement to CCC placement, but whether the BOP is precluded from even considering a transfer of Mr. Serafini to a CCC for more than the final ten percent of his prison sentence. Although noting that a number of courts have presented cogent reasons why the BOP retains such discretionary authority, the February 11th Order concluded that, in light of the vagueness of the initial submission made by Mr. Serafini, the Government should be accorded an opportunity to address the merits of the dispositive question presented here. Because of the exigency of the matter, with Mr. Serafini

---

1. The February 11th Order directed that the filing fee be paid within seven (7) days. Mr. Serafini complied with this directive by remitting payment on February 17, 2004.

having only about four months remaining on his prison term, the Government was required to file its response on an accelerated basis.

The Government commendably filed a timely response on February 18, 2004. In its response, the Government argues that the BOP lacks the discretion to place an inmate in a CCC for more than the lesser of six months or the remaining ten percent of the inmate's prison term. In making this argument, the Government urges that this Court follow the lead of several other District Courts that have sustained the BOP position, citing *Cohn v. Federal Bureau of Prisons,* 302 F.Supp.2d 267 (S.D.N.Y.2004), *Adler v. Menifee,* 293 F.Supp.2d 363 (S.D.N.Y.2003), *United States v. Mikutowicz,* No.Crim. A. 01–10321, 2003 WL 21857885 (D.Mass. Aug. 6, 2003), and *Kennedy v. Winn,* No. 03–CV–10568, 2003 WL 23150108 (D.Mass. July 9, 2003).

As acknowledged by the Government, and as set forth in this Court's February 11th Order, there exist a number of District Court decisions that have reached a contrary conclusion. *See, e.g., Zucker v. Menifee,* No. 03–CV–10077, 2004 WL 102779 (S.D.N.Y. Jan. 21, 2004); *Colton v. Ashcroft,* 299 F.Supp.2d 681 (E.D.Ky. 2004); *Cato v. Menifee,* No. 03–CV–5795, 2003 WL 22725524 (S.D.N.Y. Nov. 20, 2003); *Monahan v. Winn,* 276 F.Supp.2d 196, 203 (D.Mass.2003); *Cioffoletti v. Federal Bureau of Prisons,* No. 03–CV–3220, 2003 WL 23208216, 2003 U.S. Dist. Lexis 21853 (E.D.N.Y. Nov. 6, 2003). These cases have held that the BOP has the authority to decide whether an inmate should be placed in a CCC for the last six months of the sentence, even if that period exceeds the last 10% of the sentence.

The font of statutory authority for placement of an inmate in a CCC near the end of the sentence is 18 U.S.C. § 3624(c), which, in pertinent part, provides:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

Although this section does not state that a CCC affords conditions that will provide a "prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," *id.,* the BOP recognizes that a CCC is an appropriate option under § 3624(c). It also had taken the position that it had the discretionary authority to transfer an inmate to a CCC for up to as much as the final six months of the sentence, even if the six month period exceeded the remaining ten percent of the sentence. *See Monahan v. Winn,* 276 F.Supp.2d at 211 n. 11. This position was memorialized in BOP Program Statement 7310.04, which stated that the BOP "is *not* restricted by § 3624(c) in designating a CCC for an inmate and *may place an inmate in a CCC for more than the last 10 per centum of the term* . . . ." (Emphasis added.)

This position was apparently based upon the BOP's interpretation of 18 U.S.C. § 3621, which delegates to the BOP the authority to designate any "available penal or correctional facility" that it determines to be appropriate and suitable as a place of imprisonment. Because a community confinement center is unquestionably a "correctional facility," *see Iacaboni v. United States,* 251 F.Supp.2d 1015, 1024–26 (D.Mass.2003), the BOP viewed its authority to designate a defendant's place of imprisonment as including a CCC. Thus, the BOP had concluded that it could transfer

an inmate to a CCC for the final six months of that defendant's imprisonment, even where the six month period exceeded the last ten percent of the prison term. Indeed, the BOP routinely did so. See *Cioffoletti*, 2003 WL 23208216, at *1, 2003 U.S. Dist. Lexis 21853, at *1–2 ("long observed" practice "of allowing eligible inmates to serve up to the last six months of their sentence in a community correction center regardless of the term of that sentence....").

As related in the February 11th Order, the BOP abandoned this interpretation of its authority in the wake of a Memorandum Opinion issued by the Department of Justice Office of Legal Counsel ("OLC") to the United States Deputy Attorney General on December 13, 2002. The December 13, 2002 Memorandum Opinion, referred to herein as the "OLC Opinion," interpreted 18 U.S.C. § 3621(b) as precluding designation of a CCC as the place of imprisonment "at any time BOP chooses during the course of [the] sentence." (OLC Opinion at 8.) Although the OLC Opinion acknowledged that the BOP could transfer an inmate to a CCC under the authority of 18 U.S.C. § 3624(c), it could do so only for the last ten percent of the term to be served, but not to exceed six months.

Courts that have sustained the BOP adoption of the OLC Opinion have generally focused on the language of 18 U.S.C. § 3624(c), which does indeed suggest that a prisoner be placed "under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," only for the last ten percent of the term, and not to exceed, in any event, six months. *See, e.g., Cohn*, at 271–72. As to the interplay between § 3624(c) and § 3621(b), the courts affirming the BOP position have generally relied upon case law holding that a CCC is not a place of imprisonment for purposes of Section 5C1.1 of the United States Sentencing Guidelines. *Id.* at 272. In other words, the courts sustaining the BOP position generally take the position that a CCC cannot be a place of imprisonment under § 3621(b).

The courts finding the BOP position untenable have generally relied upon the fact that a CCC is undoubtedly a "penal or correctional facility" to which the BOP may transfer an inmate under the authority of 18 U.S.C. § 3621(b). *See, e.g., Cato*, 2003 WL 22725524, at *4; *Monahan*, 276 F.Supp.2d at 206. This conclusion is supported by the fact that time spent in a CCC under a criminal judgment is credited against a prison sentence. *See Reno v. Koray*, 515 U.S. 50, 62–63, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). As to the cases holding that a CCC is not a place of imprisonment under § 5C1.1 of the United States Sentencing Guidelines, the courts have reasoned that the Guideline provisions particular to the type of "split sentences" authorized for offenders within Zones C or D of the Guidelines do not undermine the general grant of authority to the BOP to designate a CCC as a place for imprisonment. *E.g., Zucker*, 2004 WL 102779, at *6–7. Indeed, the fact that a prisoner is entitled to credit against his sentence for time spent in a CCC during the final ten percent of the sentence undermines the assertion that a CCC is not a place of imprisonment. In any event, courts invalidating the BOP position have reasoned that "a general conferral of authority by Congress [in § 3621(b)] *does* trump a restriction contained in a Guideline." *Zucker*, 2004 WL 102779, at *7 (emphasis in original).

Having carefully examined the case law on both sides of this issue, I am persuaded by the rationale expressed by those courts that have invalidated the position currently being taken by the BOP, particularly the

reasons expressed in *Zucker*, 2004 WL 102779, at *7–10, *Colton*, 2004 WL 86430, at 691–93, *Cato*, 2003 WL 22725524, at *4–6, and *Monahan*, 276 F.Supp.2d at 205–22. If a CCC placement counts against a prison term, and the authority to designate a suitable "correctional facility" includes a CCC, as has been recognized for years, then the BOP necessarily has the authority to designate a CCC for more than the last 10% of an inmate's prison term. Decisions dealing with CCC placement in a split sentence context, in which the law directs that some part of the sentence be "imprisonment," are not applicable to the situation presented here. That case law implies an intent on the part of Congress to preclude CCC placement in split sentences. But there is nothing in the statutory scheme that supports an inference that Congress did not intend to authorize CCC placement in other contexts or for more than 10% of a prison term. Had Congress intended otherwise, it would not have delegated to the BOP the authority to place an inmate in *any* appropriate corrections facility.

In view of the time constraints, I will not elaborate further on the reasons for rejecting the new BOP policy that have been so ably and articulately expressed by the judges in the opinions cited above. Instead, I adopt and incorporate by reference the rationale of those cases. As Judge Glasser stated in *Cioffoletti*, 2003 WL 23208216, at *3, 2003 U.S. Dist. Lexis 21853, at *8, "[t]o do more would be an exercise in creative re-writing and a pretense of originality."

Mr. Serafini is thus entitled to be considered for CCC placement at this time. As the Government has pointed out, however, it does not follow from the fact that the BOP has the statutory authority to place Mr. Serafini in a CCC for the remaining months of his sentence that the BOP would exercise its discretionary authority to do so. As noted above, there is no entitlement to CCC placement for any particular period of time. Accordingly, the appropriate relief here is not to direct Mr. Serafini's transfer to a CCC, but instead to direct the BOP to consider Mr. Serafini's transfer to a CCC, utilizing the factors that it considered prior to the December, 2002 policy change.

An appropriate Order follows.

## ORDER

**NOW, THIS 23rd DAY OF FEBRUARY, 2004,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The petition for a writ of habeas corpus is **GRANTED**.

2. **WITHIN FIFTEEN (15) DAYS FROM THE DATE OF THIS ORDER,** Respondent shall, in good faith, consider petitioner for community corrections center placement in accordance with the factors taken into account by the Federal Bureau of Prisons prior to December, 2002.

3. **NO LATER THAN MARCH 12, 2004,** Respondent shall file with this Court a written report setting forth the results of its consideration of placement of Mr. Serafini in a community corrections center for the remaining balance of his prison term.

4. The Clerk of Court shall mark this matter **CLOSED**.