**Menachem LOEFFLER, Petitioner,**

v.

**Frederick MENIFEE, Warden, Federal Correctional Institution, Otisville, New York, Respondent.**

**No. 04 Civ. 3610(PKC).**

United States District Court,
S.D. New York.

June 7, 2004.

Nathaniel Z. Marmur, Paul Schechtman, Stillman and Friedman, New York City, for Petitioner.

John Peter Cronan, U.S. Attorney's, SDNY (86 Chambers St.), New York City, for Respondent.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Menachem Loeffler petitions this Court, pursuant to 28 U.S.C. § 2241, for a writ of habeas corpus. He contends that the Bureau of Prisons ("BOP") acted contrary to law in failing to place him in a Community Confinement Center ("CCC") six months prior to the expiration of his release date, and urges the Court to grant a preliminary injunction directing the BOP to promptly and in good faith consider Loeffler for placement in a CCC.

In the last seven months, BOP interpretations of the statutory authority for placing prisoners in a CCC have been discussed extensively by the courts of this district. *See Grimaldi v. Menifee,* 2004 WL 912099 (S.D.N.Y. Apr.29, 2004); *Panchernikov v. Federal Bureau of Prisons,* 2004 WL 875633 (S.D.N.Y. Apr. 23, 2004); *Crapanzano v. Menifee,* 2004 WL 736860 (S.D.N.Y. Apr. 5, 2004); *Crowley v. Federal Bureau of Prisons,* 312 F.Supp.2d 453, 2004 WL 516210 (S.D.N.Y. Mar.17, 2004); *Distefano v. Federal Bureau of Prisons,* 2004 WL 396999 (S.D.N.Y. Mar. 4, 2004); *Cohn v. Federal Bureau of Prisons,* 302 F.Supp.2d 267 (S.D.N.Y.2004); *Zucker v. Menifee,* 2004 WL 102779 (S.D.N.Y. Jan. 21, 2004); *Greenfield v. Menifee,* 2003 WL 23181269 (S.D.N.Y. Nov. 30, 2003); *Adler v. Menifee,* 293 F.Supp.2d 363 (S.D.N.Y. 2003); *Cato v. Menifee,* 2003 WL 22725524 (S.D.N.Y. Nov. 20, 2003). For the purposes of this opinion, I assume general familiarity with the rationales they adopt and the history of the BOP policy explained therein.

On June 9, 2003, petitioner Loeffler was sentenced to 18 months' imprisonment for health care fraud. At his sentencing, the petitioner specifically requested that the judge recommend that he be placed in the camp facility at FCI Otisville. (Transcript at 10, June 9, 2003, 02 Cr. 1595) The Judge honored this request and the BOP, acting on the authority granted to it under 18 U.S.C. § 3621(b), placed him in the facility so recommended. At no time prior to the filing of the instant petition, has Mr. Loeffler sought to be placed anywhere other than the facility at which he is presently confined—the camp at FCI Otisville.

The petitioner's anticipated release date, accounting for expected good time credit, is December 1, 2004, followed by three years of supervised release. (Verified Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition") Ex. C) Absent good time credit, his release date will be February 9, 2005. (Petition Ex. C) The

petitioner has been informed that he will be placed in community confinement for the final 10 percent of his sentence, beginning on or about October 15, 2004. (Petition ¶ 2; Ex. C) If he were eligible for CCC placement six-months prior to the expiration of his sentence (assuming good time), he could have been placed in such a facility on or about June 1, 2004.

Because I conclude that residency in a "community corrections facility" is not a "place of imprisonment" within the meaning of section 3621(b) of Title 18, the BOP discretion to transfer an inmate to a CCC is restricted to the time period defined in section 3624(c) of Title 18. Accordingly, the petition is denied.

*Subject Matter Jurisdiction and Exhaustion*

■ Jurisdiction properly rests with the Court. Section 2241 of title 28 provides a valid means for challenging the execution of a sentence of a person in federal custody. *See Chambers v. United States,* 106 F.3d 472, 474–75 (2d Cir.1997). Courts in this district have recognized subject matter jurisdiction over challenges, pursuant to section 2241, to the failure of the BOP to initiate a review of a prisoner's suitability for a pre-release change in conditions of confinement for the last six months of a prisoner's sentence. *See, e.g., Grimaldi,* 2004 WL 912099, at *2 (collecting cases). Framed as a challenge to the failure to engage in a review that petitioner contends was mandated by established policy,

Loeffler has standing to challenge the BOP's inaction. *See Baur v. Veneman,* 352 F.3d 625, 632 (2d Cir.2003) ("To establish Article III standing, a plaintiff must ... allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief."), *citing Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)

Remedies apparently exist for a prisoner at Otisville to challenge a refusal to be transferred to a CCC. In *Caltabiano v. Menifee,* 2004 WL 1191955 at *2–3 (S.D.N.Y. May 27, 2004), the petitioner filed a "Request for Administrative Remedy" when the BOP designated him for community confinement to commence sixty days prior to release on a 48–month sentence.[1] The Warden of FCI Otisville provided a "response" explaining the reason for the BOP action and, dissatisfied with that response, the *Caltabiano* petitioner filed an appeal to the BOP's Regional Director in Philadelphia, who denied it. *See id.* at *2.

Here, petitioner Loeffler explicitly requested that he be designated to the camp at FCI Otisville, and the BOP, upon the judge's recommendation, granted petitioner's request.[2] Until the filing of this petition, he has never requested any other change in custodial conditions. Petitioner acknowledges that he has not pursued ad-

---

1. The Court concluded that Caltabiano lacked standing to challenge the failure to grant him a change in confinement conditions at the six-month mark. When the BOP examined his suitability for such a change at the 10% juncture, it found that because of his individual history and needs, he was not suitable for such a change until later in his sentence. *Caltabiano,* 2004 WL 1191955 at *3.

2. The expectations of the sentencing judge that CCC would be available to the prisoner at

the six-month mark have been noted as a relevant consideration by at least one court. *Crowley,* at 463. If and to the extent that judicial expectations are relevant, I note that Mr. Loeffler's sentencing judge does not read 3621(b) or 3624(c) as permitting release to a CCC at any point earlier than the 10% mark. *See Cohn.* Because judicial expectations may not be apparent to the Court deciding the 2241 petition, I doubt that they ought to have much relevance.

ministrative remedies and contends that it would be futile to do so. (Petition at 3 n. 1) Unlike the petitioner in *Caltabiano* who was denied CCC placement even at the 10% point, this petitioner challenges the failure to automatically consider him for placement in a CCC at the six-month mark. In view of the respondent's express decision "not to press his failure to exhaust as a ground for denying the petition", I will excuse petitioner's failure to do so, because respondent's position is tantamount to a concession that exhaustion would have been futile. *See Cohn* at 270 n. 2.[3]

*The OLC Memorandum*

On December 13, 2002, the Office of Legal Counsel ("OLC") of the Department of Justice issued a memorandum analyzing the legal underpinnings of a BOP practice of considering the placement of inmates in CCCs for the final six months of their sentences. The OLC memorandum concluded that the BOP practice rested on an erroneous reading of the statute governing CCC facilities and the breadth of BOP discretion. (Habeas Petition Ex. D) The memorandum concluded that CCC confinement does not constitute "imprisonment" for the purposes of section 3621(b), and that BOP "lacks clear general statutory authority to place in community confinement an offender who has been sentenced to a term of imprisonment." (Habeas Petition Ex. D) Among other things, it observed that inmates placed in CCCs generally become eligible for weekend and evening leave after their second week of confinement. (Petition Ex. D. § II(B)) This contrasted with the policies of a penal or correctional facility.

The OLC's Memorandum Opinion sought to reconcile the grant of general authority in section 3621(b) with the terms of pre-release custody established by 3624(c). The first part of the OLC's analysis concluded that pursuant the Federal Criminal Code and the Sentencing Guidelines, a federal minimum term could not be satisfied by community confinement, but only "a simple sentence of imprisonment." (Petition Ex. D § I(A)) It observed that imprisonment cannot be fully equated with community confinement, citing, *inter alia*, *United States v. Adler*, 52 F.3d 20, 21 (2d Cir.1995) *(per curiam )*, a decision interpreting the Sentencing Guidelines.

Following the OLC's opinion, the BOP issued a "Memorandum for Chief Executive Officers," captioned "Community Confinement Procedure Changes." The memorandum informed Bureau officials that the BOP had reinterpreted its statutory authority regarding the placement of inmates in CCCs. In a "Memorandum for Inmate Population," respondent Frederick Menifee announced that pre-release CCC designations "are now limited in duration to the last 10% of an inmate's prison term to be served, not to exceed six months. This limitation complies with 18 U.S.C. 3624(c)." (Habeas Petition Ex. E)

■ In interpreting the statutes under which it operates, including sections

---

**3.** *See* Respondent's Memorandum of Law in Opposition at 7 n. 9; Transcript of June 2, 2004 at 13. *Cohn* stated that a court "exercises its discretion" in excusing the failure to exhaust claims prior to bringing a section 2241 petition. *See* 302 F.Supp.2d at 270 n. 2. *Zucker* held that exhaustion in a 2241 petition is "prudential, not statutory, unlike habeas corpus petitions filed pursuant to 28 U.S.C. § 2254." 2004 WL 102779 at *4. I note that

in *Pozdniakov v. I.N.S.*, 354 F.3d 176, 177 (2d Cir.2003) *(per curiam )*, the Second Circuit ordered that counsel be appointed to address whether a section 2241 petitioner must first exhaust administrative remedies before bringing a habeas claim concerning the denial of advance parole in the immigration context. The docket for this action indicates that no argument has yet occurred in this dispute.

3621(b) and 3624(c), the OLC and BOP purported to clarify existing law. *See, e.g., White v. Shalala,* 7 F.3d 296, 303–04 (2d Cir.1993) (delineating interpretation and rulemaking). The BOP's interpretation of the preexisting statute is entitled to "some deference," *see Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995), but not the greater deference afforded under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). The requirement that "some deference" be paid to the BOP's interpretation is in accord with the majority of decisions in this district.[4] That the BOP now has a different understanding of a preexisting statute does not alter the deference afforded. *See Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991) ("This Court has rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question.") *quoting Chevron,* 467 U.S. at 862, 104 S.Ct. at 2791. I evaluate the OLC's memorandum, as adopted by the BOP, with "a respect proportional to its 'power to persuade.'" *United States v. Mead,* 533 U.S. 218, 235, 121 S.Ct. 2164, 2175–76, 150 L.Ed.2d 292 (2001); *see also Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

*A Community Corrections Center Is Not A "Penal or Correctional Facility"*

Section 3621(b) of title 18 was enacted as part of the Sentencing Reform Act of 1984 (the "1984 Act") which, in turn, was part of the Comprehensive Crime Control Act of 1984. It grants the BOP the authority to "designate the place of the prisoner's imprisonment" and permits the BOP to "designate any available penal or correctional facility that meets minimum standards of health and habitability...." The statute lays out five factors to be considered in placing the prisoner, including recommendations of the sentencing judge and policy statements under the Sentencing Guidelines, 18 U.S.C. § 3621(b)(4) & (5). None of the five factors expressly relates to a prisoner's adjustment to his community at the conclusion of his sentence.

In the same 1984 Act, Congress also adopted the provisions governing probation, 18 U.S.C. §§ 3561–66. *See* Pub.L. 98–473, Title II, § 212(a)(2), Oct. 12, 1984. Probation is an alternative to a sentence of imprisonment. *See* 18 U.S.C. § 3561(b) (certain domestic violence offenders "shall be sentenced to a term of probation if not sentenced to a term of imprisonment."); 18 U.S.C. § 3564(b) ("A term of probation does not run while the defendant is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than thirty consecutive days.")

One condition that a court may lawfully impose as part of a term of probation is that the individual reside at a "community corrections facility", including one operated by the BOP. The 1984 Act expressly includes residence at such a facility as a discretionary condition of probation:

> The court may provide, as further conditions of a sentence of probation, .. that the defendant—
>
> (11) reside at, or participate in the program of, a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of probation;

4. *See Cohn,* 302 F.Supp.2d at 271; *Zucker,* 2004 WL 102779 at *5; *Crowley,* at 460; *Grimaldi,* 2004 WL 912099 at *3; *but see Cato,* 2003 WL 22725524 at *5 n. 2.

18 U.S.C. § 3563(b)(11) (numbered as subparagraph 12 in the original 1984 Act). The quoted language speaks of a "community corrections facility" as a place where an individual "reside[s]" or "participate[s]" in a "program", terminology that is at odds with the notion of a place of imprisonment. Congress included CCC residency under probation even though it recognized that the "facility" may be "maintained or under contract" with the BOP. Aside from subdivision 11, I find no mention of a community corrections "facility" or "center" in the 1984 Act. The express inclusion of a community corrections facility as part of a sentence of probation leads me to conclude that this type of "facility" is not included within the meaning of a "penal or correctional facility" under section 3621(b).

In a variety of contexts, courts have distinguished the characteristics of imprisonment from those of probation. "[P]robation and imprisonment are not fungible; they are sentences fundamentally different in character." *United States v. Granderson*, 511 U.S. 39, 46, 114 S.Ct. 1259, 1264, 127 L.Ed.2d 611 (1994) (internal quotation marks omitted). *See Blanton v. City of North Las Vegas, Nevada*, 489 U.S. 538, 542, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550 (1989) ("Penalties such as probation or a fine may engender a significant infringement of personal freedom, but they cannot approximate in severity the loss of liberty that a prison term entails.") (internal quotation marks and citations omitted).

The Second Circuit has described probation as a form of "conditional liberty" that distinguishes it from both imprisonment and unfettered freedom of movement and action. "Probation does not confer upon a convicted defendant the absolute liberty which ordinary citizens enjoy," the Second Circuit observed in *United States v. Beech–Nut Nutrition Corp.*, 925 F.2d 604, 608 (2d Cir.1991). "Neither is a person on

probation a prisoner absent the walls. Rather, a probationer has the right to 'conditional liberty' which continues so long as the conditions of probation are observed." *Id., citing Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972). In discussing the standards for revocation of probation under 18 U.S.C. § 3565(a), the Second Circuit observed that "we decline to impute to Congress an intent simply to convert terms of probation into terms of imprisonment absent a clearer indication of such an intent." *United States v. Alese*, 6 F.3d 85, 86 (2d Cir.1993) (*per curiam*).

If residency in a CCC were deemed to be imprisonment in a "penal or correctional facility", it would create an anomaly under conditions of supervised release. Some penal statutes permit a court to impose a term of supervised release after the expiration of a term of imprisonment. 18 U.S.C. § 3583(d). For most of the life of the 1984 Act, a court-imposed condition to supervised release could include a requirement that an individual reside at a community correctional facility. *See* 18 U.S.C. § 3583(d), *cross-referencing* 18 U.S.C. § 3563(b)(12) (West 1995), *amended by* Pub.L. No. 104–132 § 203(2)(A), (B), Apr. 24, 1996. If such a facility were deemed a "penal or correctional facility," then imposing it as a condition of supervised release would be facially permissible, but result in imprisonment beyond the statutory maximum.

In 1996, as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 § 203(2)(A), (B), Apr. 24, 1996, Congress amended the discretionary conditions of probation listed in section 3563(b), renumbering the remaining sections and shifting the community confinement provision from subsection (b)(12) to (b)(11). Congress did not simultaneously amend section 3583(d), the pro-

vision that cross-referenced section 3563(b)(12) as a term of supervised release. Following a canon of statutory construction that adheres to the meaning of an original statutory cross-reference when "one section of a statute refers to another section which alone is amended," *Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 565, 82 L.Ed. 858 (1938), the Circuits to have reached this question have concluded that community confinement remains a discretionary condition of supervised release under section 3583(d). *See United States v. Griner,* 358 F.3d 979, 982 (8th Cir.2004) (section 3583(d) specifically adopted the provision that community confinement is an aspect of supervised release, and the renumbering of amendments to section 3563 does not have a preclusive effect); *United States v. Bahe,* 201 F.3d 1124, 1125 (9th Cir.2000) (describing as "an inadvertent clerical error" the failure of the revised 3583(d) to cross reference 3563(b)(11)), *cert. denied,* 531 U.S. 1027, 121 S.Ct. 601, 148 L.Ed.2d 514 (2000); *see also* Fed. Sent. L. & Prac. § 5F1.1 (2004 ed.) (noting question as to whether Congress intended to alter section 3583(d)'s cross-reference to section 3563(b)'s community confinement provision); U.S.S.G. § 5D1.3(e)(1) (raising same question); *but see United States v. Mills,* 186 F.Supp.2d 965 (E.D.Wis.2002) (rejecting *Bahe* and holding that halfway house confinement is disallowed as a term of supervised release). Thus, a defendant may be sentenced to the maximum term of imprisonment and, upon completion of that term, required to serve additional time in a community corrections facility as a condition of supervised release. This makes sense if a community corrections facility is not a place of imprisonment.

The conclusion that a CCC is not a "penal or correctional facility" accords the BOP "some deference" in a particular area in which it is entitled to such deference. *See Mead, supra.* The BOP has direct authority over community corrections facilities and is in a good position to know whether the characteristics of confinement in a CCC are akin to those of a "penal or correctional facility."

Although petitioner has not sought, and the BOP has not tendered, an exhaustive review of the manner in which the BOP treats the CCC for other purposes, the indications are that the BOP acts consistently with the statutory interpretation it proffers to this Court. In response to questions from the Court, the respondent has submitted two affidavits of James Sullivan, the BOP Community Corrections Manager of New York, confirming that BOP does not engage in the review outlined in 18 U.S.C. § 3622, governing temporary release from a "place of imprisonment", in the case of a person in CCC. (Declaration of James Sullivan ¶ 6) BOP is mandated by statute to treat paid employment by a person in a "penal or correctional facility" in accordance with section 3622(c), but does not do so in the case of an individual in CCC. (Declaration of James Sullivan ¶ 7) The BOP does provide good time credit for an individual in a CCC, but also provides such credit for a person in home confinement. (Supplemental Declaration of James Sullivan ¶ 3)

This interpretation of section 3621(b) is also consistent with the reasoning of courts that have compared the characteristics of a place of imprisonment with those of a CCC in the context of the Sentencing Guidelines. Several Courts of Appeals, including the Second Circuit, have held that a CCC does not constitute a "place of imprisonment" under the Guidelines. In *United States v. Adler,* 52 F.3d 20, 21 (2d Cir.1995) (*per curiam*), the Second Circuit determined that pursuant to the Guidelines, " '[i]mprisonment' and 'community confinement' are not synonyms. 'Impris-

onment' is the condition of being removed from the community and placed in prison, whereas 'community confinement' is the condition of being controlled and restricted within the community." *Adler* made this determination based on the structure of the Sentencing Guidelines, U.S.S.G. § 5C2.1(d), which implicitly distinguished community confinement from imprisonment. *See id. See also U.S. v. Serafini*, 233 F.3d 758, 777 (3d Cir.2000) ("[U]nder section § 5C1.1 of the Guidelines, 'community confinement' cannot constitute 'imprisonment' for purposes of fulfilling the requirement that one-half of a split sentence be satisfied by imprisonment.") (collecting cases); *U.S. v. Horek*, 137 F.3d 1226, 1228–29 (10th Cir.1998) (under the Guidelines, community confinement cannot constitute imprisonment, and functions instead as a condition of probation), *cert. denied* 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998); *U.S. v. Swigert*, 18 F.3d 443, 445–46 (7th Cir.1994) ("The distinction drawn in section 5C1.1 between 'imprisonment' and either community confinement or home detention is consistent with the plain meaning of the term 'imprisonment' ...."). Though these holdings do not bind this Court in construing section 3621(b), it does not mean that their rationales lack persuasive power.[5]

Petitioner argues that the logic of *Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) supports the inclusion of a CCC within the ambit of 3621(b). *Koray* considered whether an offender detained in a "community treatment center" prior to trial was entitled to credit this pre-trial detention against the subsequent prison sentence. The Court held that time spent at the community treatment center while on bail was not "official detention" under 18 U.S.C. § 3585(b), and therefore the prisoner was not entitled to credit against his sentence. *See id.* at 515 U.S. at 63–65, 115 S.Ct. at 2028–29. The Court's opinion notes the existence of a DOJ program statement that construed 3621(b) in the manner in which it was interpreted prior to the December 13, 2002 memorandum, *i.e.* that a CCC is a "penal or correctional facility" within the meaning of section 3621(b). *See id.* at 515 U.S. at 62, 115 S.Ct. at 2028. Certainly, the description of the memorandum does not stand as a judicial endorsement of its conclusion. Moreover, the fact that a prisoner in pre-release status receives credit for time in a CCC does not translate it into a "penal or correctional facility." Section 3624(c), fairly read, permits pre-release home confinement to be credited as time served as part of a term of imprisonment, even though it is not penal or correctional confinement. I do not view *Koray* as answering the questions posed here.[6]

Some courts have noted that prior to the 1984 Act, section 4082(b), Pub.L. No. 98–473 § 218(a)(3), allowed the Attorney General to "designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise ..." Facility is defined to "include a residential treatment center...." 18 U.S.C. § 4082(c). *See Zucker*, 2004 WL 102779 at *8–9; *Distefano*, 2004 WL 396999 at *5–6. In the 1984 Act, Con-

---

**5.** I note that policy statements by the Sentencing Commission are a factor to be considered under section 3621(b)(5).

**6.** *Koray* describes its holding as follows: "We hold that the time respondent spent at the Volunteers of American community treatment center while 'released' on bail pursuant to the Bail Reform Act of 1984 was not 'official detention' within the meaning of 18 U.S.C. § 3585(b). Respondent therefore was not entitled to a credit against his sentence of imprisonment." 515 U.S. at 65, 115 S.Ct. at 2029.

gress gave BOP authority to designate "the place of the prisoner's imprisonment" (in contrast to the earlier "place of confinement") that could include "any available penal or correctional facility ...." (in contrast to the earlier "any available, suitable, and appropriate institution or facility....") 18 U.S.C. § 3621(b). The definition of "facility" as a "residential community treatment center" remained as a written but its applicability was limited to "escape from custody". 18 U.S.C. § 4082(a).

The "escape from custody" provision remains broad and reaches the "willful failure of a prisoner to remain within the extended limits of his confinement...." Such a definition would appear to encompass, for instance, a violation of home confinement that could not arguably be equated with imprisonment. Therefore, I do not ascribe much significance to Congress's decision not to alter the definition of "facility" when it narrowed the range of issues addressed in section 4082.

*Pre–Release Custody*

The 1984 Act addresses a prisoner's adjustment to release and requires the BOP, to the extent practicable, to "assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." 18 U.S.C. § 3624(c).

A straightforward reading of section 3624(c) permits the BOP to exercise its discretion to transfer an inmate to a CCC for the last 10 percent of the term to be served, not to exceed six months. *See Cohn,* 302 F.Supp.2d at 271; *see also Adler,* 293 F.Supp.2d at 367–68. Under the 10 percent limitation, an inmate must face a sentence of five years or longer to

be eligible for the statute's maximum six-month period of community confinement. Because I have concluded that the BOP does not have discretion under section 3621(b) to transfer an inmate to a CCC, the BOP's authority derives from section 3624(c) and is subject to its temporal limitations.

One interpretation of section 3624(c) that has been offered is that it is a mandate to the BOP to apply, at a specific juncture, the discretion that otherwise exists by reason of 3621(b). *See Grimaldi,* 2004 WL 912099 at *6. I read 3624(c) differently. Section 3624(c) allows the BOP to adopt "conditions that will afford the prisoner a reasonable opportunity to adjust...." Those conditions could range from a less restrictive form of confinement in a "penal or correctional facility" or may be "conditions" that afford the individual substantially more liberty, such as residing at a CCC. The statute speaks of the "authority provided by this subsection" as including the release of the prisoner to home confinement. I read 3624(c) as authorizing the BOP to designate conditions or facilities that it could not designate under 3621(b).

*Ex Post Facto*

It remains to be determined whether a change in the six-month review policy based upon a different interpretation of the BOP's discretion under section 3621 gives rise to an *ex post facto* claim. The indictment to which Mr. Loeffler pleaded guilty charged a crime that occurred from March 1, 1993 to June 2001, 02 Cr. 1595(WHP), a time prior to the OLP Memorandum and BOP change of policy.

The *ex post facto* clause of the U.S. Constitutions forbids the enactment of "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes addi-

tional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (internal quotations and citations omitted). In examining section 3624(c), this Court must determine if the OLC Memorandum, promulgated after the commission of plaintiff's crime,[7] constituted a change in the law that was "both retrospective and more onerous than the law in effect on the date of the offense" giving rise to an *ex post facto* violation. *Id.* at 30–31, 101 S.Ct. at 965. When considering a statute, regulation or policy that effects a prisoner's term of imprisonment what is crucial "is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when ... punishment [is increased] beyond what was prescribed when the crime was consummated." *Id.* at 30, 101 S.Ct. at 965. The "critical question" in this case, as it was in *Weaver*, "is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence." *Id.* at 32 n. 17, 101 S.Ct. at 966 n. 17.

Some courts in this district have held that the new interpretation of section 3624(c) violates the *ex post facto* prohibition because it acts to extend prisoners' incarceration within a penal or correctional facility in their last six months of confinement. *See, e.g., Panchernikov*, 2004 WL 875633, at *3; *Crapanzano*, 2004 WL 736860, at *3. While these decisions agreed with the statutory interpretation found in *Cohn*, they diverged from *Cohn's* ultimate

conclusion because they viewed the interpretation of section 3624(c) as new. The opinions reasoned that the OLC interpretation changed the established understanding of the statute and failed to give prisoners "fair notice" of the sentence imposed. *See Crapanzano*, 2004 WL 736860, at *2–3.

But, there has been no change in the statutory language of sections 3621(b) or 3624(c). Absent such a change, the corrected reading of the statutory language cannot give rise to an *ex post facto* claim because the Constitution does not give plaintiff a vested right in erroneous interpretations of law. As the Second Circuit noted in *Caballery v. United States Parole Comm'n*, "an agency misinterpretation of a statute cannot support an ex post facto claim." 673 F.2d 43, 47 (2d Cir. 1982).[8] In *Caballery*, a youth offender contested a new regulation promulgated by the Parole Commission which changed the Parole Commission's standing practice of not tolling a youth offender's sentence during the time that he or she was absent from supervision without permission. *Id.* at 44–45. Prior to the adoption of this regulation, youth offenders' sentences were not tolled during the time that they had failed to comply with the conditions of their parole despite the plain meaning of the Youth Corrections Act. *Id.* at 45. Caballery contended that this represented a change in the law which operated to extend his sentence past its original expiration date. *Id.* at 44–45. The Court disagreed stating that the "tolling of a youth offender's sentence when he absconded

---

7. Respondent asserts that no *ex post facto* violation exists because petitioner was sentenced on May 28, 2003, months after the December 2002 policy was in effect. However, *ex post facto* concerns are viewed in light of the date of the commission of the crime, not the date of sentencing. *See U.S. v. Gonzalez*, 281 F.3d 38, 45–46 (2d Cir.2002).

8. *See Cohn*, 302 F.Supp.2d at 275 (BOP's December 2002 interpretation of section 3624(c) is not an *ex post facto* violation because "it merely corrects the BOP's erroneous prior interpretation of pre-existing law."); *Adler*, 293 F.Supp.2d at 367 ("[b]ecause there is no change in the plain meaning of [Section 3624(c)], there is no violation in the *ex post facto* clause.").

from parole supervision was not forbidden by the statute when appellant was sentenced, nor does such tolling impose a more onerous punishment than that permitted by the statute at the time of sentencing." *Id.* at 47. *See also Warren v. Baskerville,* 233 F.3d 204, 207–08 (4th Cir. 2000) (change in the parole board's policy which revoked good time credits when revoking parole was not an *ex post facto* violation because statutory language did not change, only the procedure of the parole board changed; further stating: "[a] change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws."); *Stephens v. Thomas,* 19 F.3d 498, 500 (10th Cir.1994) (holding that the *ex post facto* clause does not prohibit "the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication."); *Cortinas v. United States Parole Comm'n,* 938 F.2d 43, 46 (5th Cir.1991)(new regulation adopting the proper reading of a parole statute requiring mandatory forfeiture of street time does not constitute an *ex post facto* violation even when that change equated to a change in parole commission policy); *Glenn v. Johnson,* 761 F.2d 192, 194–95 (4th Cir.1985) (Attorney General's opinion correcting the misapplication of a statute limiting parole until minimum had been served was not an *ex post facto* violation); *Mileham v. Simmons,* 588 F.2d 1279, 1280 (9th Cir.1979) ("The Ex post facto clause of the Constitution does not give [plaintiff] a vested right in . . . an erroneous interpretation [of the law].").

Petitioner Loeffler does not have "a vested interest in [a] violation of the law no matter how long continued." *Adler,* 293 F.Supp.2d at 367. In large part, this is due to the foreseeability of the corrected interpretation of the plain meaning of a statute. *See, e.g. Stephens,* 19 F.3d at 500

("when the current interpretation of a statute is foreseeable, there can be no Ex Post Facto Claus violation."); *Glenn,* 761 F.2d at 195 ("Since the interpretation of the statute was not only foreseeable but indeed was inescapable, the plaintiffs simply have no case."). Because the law has not changed since the commission of plaintiff's crime, I find that the reinterpretation of the statutes does not violate the *ex post facto* clause.

The petition for a writ of habeas corpus is denied in its entirety. Because the writ is denied, I need not otherwise consider his application for a preliminary injunction.

SO ORDERED.