Carol SKELSKEY, Petitioner,

v.

Kuma DEBOO, Warden, Respondent.

No. Civ.A. 3:04CV986CFD.

United States District Court,
D. Connecticut.

Aug. 16, 2004.

486

Todd Allen Bussert, New Haven, CT, for Plaintiff.

David X. Sullivan, U.S. Attorney's Office, New Haven, CT, William A. Collier, U.S. Attorney's Office, Hartford, CT, for Defendant.

### RULING ON MOTION FOR PRELIMINARY INJUNCTION AND PETITION FOR WRIT OF HABEAS CORPUS

DRONEY, District Judge.

Petitioner Carol Skelskey has filed with the Court a Petition for Writ of Habeas

1. In addition to filing for relief under 28 U.S.C. § 2241, Skelskey has invoked the mandamus authority of 18 U.S.C. § 1361. However, since subject matter jurisdiction exists here under 28 U.S.C. § 2241 and the Court denies relief under that statute, it need not address mandamus jurisdiction or relief.

2. There appears to be no dispute between the parties as to these findings of fact, except where indicated.

Corpus under 28 U.S.C. § 2241 [Doc. # 1] and a Motion for Preliminary Injunction [Doc. # 2].[1] Skelskey, an inmate serving an 18–month sentence at the Federal Prison Camp attached to the Federal Correctional Institution at Danbury, Connecticut ("FPC Danbury"), challenges the decision of Kuma Deboo, the Warden of FPC Danbury, limiting Skelskey to no more than 46 days' community confinement at the conclusion of her 18–month sentence. She also seeks to enjoin Warden Deboo from acting pursuant to the related policy of the Bureau of Prisons ("BOP") that federal prisoners may only be assigned to Community Corrections Centers ("CCCs") at the end of their sentences for the lesser of 10% of their sentences or six months.

In addressing Skelskey's Motion for Preliminary Injunction, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact [2]

Prior to December 2002, the BOP followed a practice that permitted it to transfer sentenced inmates to CCCs for up to the last six months of their sentences, regardless of whether the time in the CCCs exceeded 10% of their sentences. On December 13, 2002, the U.S. Department of Justice's Office of Legal Counsel ("OLC") issued an opinion that this longstanding BOP policy was inconsistent with the statutory requirements set forth in 18 U.S.C. §§ 3621(b) and 3624(c).[3] Based on

3. Although most of the OLC Memo addresses when designation to CCCs at the beginning of sentences is permitted, the Memo also specifically addressed the issue here:

Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a nonprison site is clearly limited to a period

that OLC memorandum, the BOP revised its policy to limit CCC placements to the last 10% of the prison sentence. On December 20, 2002, the BOP issued a written memorandum to its wardens and other officers setting forth the change resulting from the OLC Memorandum.

On June 30, 2003, Skelskey surrendered to FPC Danbury to commence service of her 18–month sentence resulting from her conviction for federal drug offenses. Skelskey's projected release date, based on accumulated good conduct time, is October 19, 2004. The BOP has calculated that Skelskey will be eligible for placement at a CCC on September 3, 2004—the lesser of six months or 10% of her sentence. Skelskey contends that she should have been eligible for CCC placement for the last six months of her sentence, beginning on April 22, 2004.[4] Skelskey brings this action to challenge the current BOP policy limiting the duration of her CCC placement.

### Conclusions of Law

Skelskey argues that the current BOP policy (1) is based on an erroneous interpretation of 18 U.S.C. §§ 3621(b) and 3624(c); and (2) violates the notice and comment protections of the Administrative Procedures Act ("APA").[5]

### I. Standard for Preliminary Injunctive Relief

■ The Second Circuit has cautioned that preliminary injunctive relief "is an extraordinary and drastic remedy which should not be routinely granted." *Buffalo* *Forge Co. v. Ampco–Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981) (internal quotations omitted). Entry of a preliminary injunction is appropriate where the moving party shows: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir.2002) (citing *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 172 (2d Cir.2001)). However, "when, as here, the moving party seeks a preliminary injunction that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir.2001) (quoting *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir.1999)).

### II. BOP's Interpretation of 18 U.S.C. §§ 3621(b) and 3624(c)

■ Where Congress has delegated the authority to implement and administer a statute to an agency, that agency's interpretations are afforded "some deference" so long as they constitute "a permissible construction of the statute." *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (internal quotations

---

"not to exceed six months, of the last 10 per centum of the term to be served," 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation. OLC Memo at 7 n. 6.

4. While Warden Deboo does not concede that Skelskey would have been transferred to a CCC on April 22, 2004 under the pre-December 2002 policy, Warden Deboo does appear to agree, however, that under the pre-Decem-

ber 2002 policy Skelskey would likely have been transferred to a CCC before September 3, 2004.

5. It appears that Skelskey has exhausted her administrative remedies, which Warden Deboo concedes. This opinion does not address the question of whether such exhaustion is required.

omitted). *See also Rust v. Sullivan,* 500 U.S. 173, 186, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) ("This Court has rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question.'") (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 862, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

■ Thus, the BOP, as the agency charged with administering §§ 3621 and 3624, is entitled to some deference in its revised interpretation of the statutes.

18 U.S.C. § 3624(c) provides, in pertinent part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c). Even without according some deference to the BOP's interpretation of § 3624(c), a plain reading of the statute shows that the current BOP policy of limiting CCC placements to the last 10% of the prison sentence follows the express restriction set forth in § 3624(c). *See Cohn v. Fed. Bureau of Prisons,* 302 F.Supp.2d 267, 271 (S.D.N.Y.2004) ("Under a plain reading of § 3624(c), the BOP's back end placement of an inmate in a CCC prior to the end of an inmate's sentence is expressly and unambiguously limited to a 'reasonable part, not to exceed six months, of the last 10 per centum of the term to be

served.'"); *Adler v. Menifee,* 293 F.Supp.2d 363, 367 (S.D.N.Y.2003) ("For many years the Bureau of Prisons appears to have intentionally disregarded the plain meaning of § 3624(c) and, to the extent facilities were available and deemed suitable, has been placing prisoners in CCC for the last six months of their sentence without regard to the ten percent statutory limitation.").

■ Skelskey argues that the interplay between § 3621(b) and § 3624(c) allows the BOP to assign an inmate to a CCC at any time during the sentence.[6] In support of her argument, Skelskey relies on various decisions where the courts have held that the current BOP policy is an invalid interpretation of § 3621(b). *See Grimaldi v. Menifee,* 2004 WL 912099, at *3 (S.D.N.Y. April 29, 2004) (collecting cases holding that current BOP policy relies on an erroneous interpretation of §§ 3621(b) and 3624(c)). § 3621(b) provides, in pertinent part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau.... The Bureau may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). Skelskey argues that the general grant of authority under § 3621(b) allows the BOP to place an inmate in a CCC for all or part of a prison term because it is a "correctional facility." However, the BOP has determined that a CCC is not a place of imprisonment, and thus "section 3621(b) does not authorize BOP to subvert that statutory scheme by placing in community confinement an of-

---

**6.** This portion of Skelskey's argument would also appear to challenge the six-month restriction of § 3624(c). However, she specifically requested relief from only the 10% restriction in her petition.

fender who has received a sentence of imprisonment." OLC Memo at 6. The BOP's interpretation is a permissible interpretation of the statute and is supported by Second Circuit precedent. *See United States v. Thomas*, 135 F.3d 873, 875 n. 3 (2d Cir.1998) (stating that the Second Circuit has already "held that confinement in a community correctional center [is] not 'imprisonment.'") (internal citation omitted); *United States v. Adler*, 52 F.3d 20, 21 (2d Cir.1995) (drawing distinction between community confinement and imprisonment).[7]

 In addition, the BOP permissibly construes § 3624(c) as limiting the BOP's discretion in making pre-release custody placement determinations under § 3621(b). Two canons of statutory construction are relevant here, namely, that "courts must give effect, if possible, to every clause and word of a statute," *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), and that "the specific governs over the general." *Varity Corp. v. Howe*, 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In accordance with these canons of statutory construction, the specific 10% limitation set forth in § 3624(c) is a limit on the BOP's discretion under § 3621(b). Thus, the current BOP policy is not based on an erroneous interpretation of 18 U.S.C. §§ 3624(c) and 3621(b).

### III. Administrative Procedures Act

Skelskey argues that the BOP's current policy violates the APA because the BOP enacted a substantive rule in revising its interpretation of 18 U.S.C. § 3624(c) and

failed to provide prior notice and opportunity to comment.

 Before an agency may enact a substantive rule, the APA requires that the rule be subjected to a prior notice and comment period. *See* 5 U.S.C. § 553(b)-(d); *New York State Elec. & Gas Corp. v. Saranac Power Partners*, 267 F.3d 128, 131 (2d Cir.2001). However, "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" are exempt from the notice and comment requirement. 5 U.S.C. § 553(b)(3)(A). The Second Circuit distinguishes substantive or legislative rules from interpretative rules in the following manner: substantive or legislative rules "create new law, rights, or duties, in what amounts to a legislative act," while interpretive rules "clarify an existing statute or regulation." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir.1993). *See also Sweet v. Sheahan*, 235 F.3d 80, 90–91 (2d Cir.2000); *Zhang v. Slattery*, 55 F.3d 732, 745 (2d Cir.1995); *United States v. Yuzary*, 55 F.3d 47, 51 (2d Cir.1995). An agency decision to alter its interpretation of a statute does not necessarily bring it within the notice and comment requirements of the APA. *See White*, 7 F.3d at 304 ("[A]n interpretive rule changing an agency's interpretation of a statute is not magically transformed into a legislative rule."). *But see Zhang*, 55 F.3d at 745 ("A rule is interpretive ... if it attempts to clarify an existing rule but does not change existing law, policy, or practice.") (internal quotations omitted).

---

**7.** It need be noted that *Thomas* and *Adler* dealt with whether confinement in a community correctional center or home detention constitutes "imprisonment" under the United States Sentencing Guidelines at the beginning of sentences. They rely on a number of specific provisions in the Guidelines that do not directly apply to the issue here concerning the latitude of the BOP to transfer prisoners at the end of their sentences. However, the Second Circuit's view that community confinement is not "imprisonment" in that context provides some guidance here as well.

The December 2002 BOP policy did not create any new law, rights, or duties. Instead, the BOP altered its interpretation of § 3624(c) in order to comply with the requirements set forth in the statute. Since the December 2002 policy merely clarifies § 3624(c), it is interpretive and not subject to the notice and comment requirements of the APA. Thus, the BOP's current policy is not invalid for violating the APA.

### Conclusion

As Skelskey has failed to show a likelihood of success on the merits, the Motion for Preliminary Injunction [Doc. # 2] is DENIED. In addition, since additional factual evidence would not change the analysis applied above, Skelskey's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. # 1] is DENIED. The Clerk is directed to close the case.[8]

SO ORDERED.

---

8. Because the petition is brought under 28 U.S.C. § 2241, the Court does not address the issue of a certificate of appealability. *See Thom v. Ashcroft*, 369 F.3d 158, 161 n. 3 (2d Cir.2004) (stating that COA requirement of 28 U.S.C. § 2253 does not apply to federal habeas proceedings brought under section 2241) (citing *Drax v. Reno*, 338 F.3d 98, 106 n. 12 (2d Cir.2003)).