# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2253

———————

Anthony R. Elwood,            *
                                            *

        Plaintiff - Appellant,    *

                                            *   Appeal from the United States

    v.                              *   District Court for the Eastern

                                            *   District of Arkansas.

Cole Jeter, Warden, FCI Forrest City;  *

United States Bureau of Prisons,    *

                                            *

        Defendants - Appellees.    *

———————

Submitted: September 13, 2004
Filed: October 18, 2004

———————

Before RILEY, LAY, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

Anthony Elwood ("Elwood") appeals the district court's denial of his Petition for a Writ of Habeas Corpus, alleging that the Bureau of Prisons's ("BOP") policy of limiting prisoner placement in Community Corrections Centers ("CCC") to the lesser of six months or ten percent of the prisoner's sentence is illegal. We reverse.

## Procedural Background

On May 28, 2002, Elwood pled guilty to one count of wire fraud in the United States District Court for the Western District of Missouri. On February 20, 2003, the

district court sentenced him to forty-eight months in prison, followed by three years of supervised release. Upon entering prison, Elwood learned that he would not be eligible for transfer to a CCC until November 28, 2005, which would be, with the application of good time credits, four months from the end of his sentence. Elwood filed grievances asserting that he should be transferred to a CCC at an earlier date.[1] Elwood's grievances were denied. On December 31, 2003, Elwood filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. The district court denied his petition on May 5, 2004.

### The History of the BOP's Placement Policies

At the time Elwood pled guilty, the BOP had a policy of allowing prisoners to serve their last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised. However, on December 13, 2002, in response to an inquiry by the BOP, the Office of Legal Counsel of the U.S. Department of Justice issued a Memorandum (the "Memorandum") that found the BOP's CCC placement policy illegal because it was inconsistent with the BOP's statutory grant of authority.

The BOP is granted authority to designate the place of an inmate's imprisonment in 18 U.S.C. § 3621(b):

> (b) Place of imprisonment.—The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any

---

[1] The parties agree that Elwood failed to exhaust his administrative remedies, however, the government waived the exhaustion requirement because it concedes Elwood's continued use of the grievance procedure to contest the validity of the BOP's new policy would be futile.

available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable . . . . The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another.

However, this grant of authority must be read in conjunction with 18 U.S.C. § 3624(c):

> (c) Pre-release custody.—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The Memorandum concluded that the BOP's policy of placing prisoners in CCCs for six months at the end of their terms was inconsistent with § 3621(b) and § 3624(c). The Memorandum acknowledged that § 3621(b) gave the BOP the authority to choose an inmate's place of imprisonment generally. However, the Memorandum found that "[c]ommunity confinement does not constitute imprisonment." Memorandum at 1, available at http://www.usdoj.gov/olc/allopinionstxt.htm. Therefore, § 3621(b), which gives the BOP the power to decide a prisoners "place of imprisonment" in "any available penal or correctional facility" did not apply to placement in CCCs. Id. According to the Memorandum, the authority to transfer a prisoner to a CCC came solely from § 3624(c). This section limited the stay in "conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" to "a reasonable part, not to exceed six months, of the last 10 per centum

of the term." 18 U.S.C. § 3624(c); see Memorandum at 1, 6. The Memorandum concluded the BOP had no authority to transfer a prisoner to a CCC, except for the lesser of the last ten percent of the sentence and the last six months of the sentence.

The United States Attorney General's Office Adopted the Office of Legal Counsel's position on December 16, 2002. On December 20, 2002, the BOP adopted the opinions of the Office of Legal Counsel and the Attorney General and instituted a policy that inmates could be released to CCCs only for the last ten percent of their terms, to be capped at six months.

Under the new BOP policy, Elwood is eligible for placement in a CCC beginning November 28, 2005, during only the last four months of his sentence, while under the old BOP policy, he would be eligible for placement in a CCC for a full six months of his sentence. Elwood argues that the new policy is illegal, and that he is entitled to additional time in a CCC near the conclusion of his confinement.

## Discussion

**A. Standard of Review**

When reviewing an agency's interpretation of a statute, we must first consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). If "Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. We find that, here, Congress addressed the issue, so we need not look to the agency's interpretation of the statute.

**B.     Analysis**

Elwood brings three challenges to the BOP's new placement policy.  First, Elwood claims that the policy is based on an erroneous interpretation of two statutory provisions, 18 U.S.C. §§ 3621(b) and 3624(c).  Second, Elwood argues that the policy violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 553, because it was not published and made available for public comment.  Third, Elwood contends that the policy violates the Ex Post Facto Clause.  Because we grant relief on Elwood's statutory argument, we need consider neither his APA nor Ex Post Facto claims.

Elwood argues that, based on 18 U.S.C. §§ 3621(b) and 3624(c), the BOP may transfer an inmate to a CCC at any time and *must* transfer an inmate for a reasonable part of the last ten percent of his or her sentence, though this obligation does not extend beyond six months.  His reading of the statutes is based on the following claims.  First, § 3621(b) gives the BOP the authority to transfer an inmate to any penal or correctional facility at any time.  Second, a CCC is a penal or correctional facility and a place of imprisonment.  Third, § 3624(c) reads:

> The Bureau of Prisons *shall*, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added).  Elwood contends this "shall" bestows a duty on the BOP to transfer inmates, not merely a power to do so.  Therefore, Elwood argues, the BOP has the discretion to transfer him to a CCC at any time during his

sentence, and the BOP must transfer him to a CCC or similar conditions for the last ten percent of his term, unless it is not practicable to do so.

Until recently, no appeals court had spoken on the issue of the legality of the BOP's current placement policy. However, the First Circuit in a recent decision, Goldings v. Winn, No. 03-2633, 2004 WL 2005625 (1st Cir. Sept. 3, 2004), agreed with Elwood's interpretation of the statutes and invalidated the policy. In addition, the judgments of several district courts support Elwood's interpretation. See, e.g., Schoenfeld v. Menifee, No. 04Civ.3551NRB, 2004 WL 1516797 (S.D.N.Y. July 7, 2004); Zucker v. Menifee, No. 03 Civ. 10077(RJH), 2004 WL 102779 (S.D.N.Y. Jan. 21, 2004); Fagiolo v. Smith, 326 F. Supp. 2d 589 (M.D. Penn. Mar. 12, 2004); Cato v. Menifee, No. 03 Civ. 5795(DC), 2003 WL 22725524 (S.D.N.Y. Nov. 20, 2003); Grimaldi v. Menifee, No. 04CIV1340DABGWG, 2004 WL 912099 (S.D.N.Y. Apr. 29, 2004).

The government, on the other hand, contends that the current BOP policy reflects the correct interpretation of 18 U.S.C. §§ 3621(b) and 3624(c). The government agrees with Elwood that § 3621(b) gives the BOP authority to "at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another." See 18 U.S.C. § 3621(b). It also agrees that a CCC is a penal or correctional facility and a place of imprisonment.[2] However, the government reads

---

[2] The government conceded, both in its brief and in oral argument, that a CCC is a place of imprisonment. This approach is a departure from the Office of Legal Counsel's position, as well as the position of many courts that have upheld the policy. See, e.g., Adler v. Menifee, 293 F. Supp. 2d 363 (S.D.N.Y. 2003); Galizia v. The Federal Bureau of Prisons, No. 04 Civ. 5777(RCC), 2004 WL 1900350 (S.D.N.Y. Aug. 25, 2004); Roth v. Menifee, No. 04 Civ. 3552(TPG), 2004 WL 1886010 (S.D.N.Y. Aug. 23, 2004); Skelskey v. Deboo, No. Civ.A. 3:04CV986CFD., 2004 WL 1897023 (D. Conn. Aug. 16, 2004); Cohn v. The Federal Bureau of Prisons, 302 F. Supp. 2d 267 (S.D.N.Y. 2004); Loeffler v. Menifee, 326 F. Supp. 2d 454 (S.D.N.Y.

§ 3624(c) to be a limit on the general authority granted in § 3621(b), and not an affirmative duty to place inmates in CCCs for the conclusion of their time of incarceration. See Varity Corp. v. Howe, 516 U.S. 489, 511 (1996) (holding that when construing statutes, the "specific governs the general" (internal citations omitted)) . Therefore, the government concludes, the BOP may transfer an inmate to a CCC only during the last ten percent of the inmate's term, and not to exceed six months.

We agree with the interpretation of the statutes put forward by Elwood and the First Circuit. Section 3624(c) clearly states that the BOP "shall" "assure" that each prisoner spends a reasonable part of the last ten percent of his or her term "under conditions that afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" to the extent that this is practicable. As the First Circuit stated:

> This language imposes an affirmative obligation on the BOP to take steps to facilitate a smooth re-entry for prisoners into the outside world. It is true that this obligation is qualified. Section 3624(c) does not mandate placement in a CCC prior to release, and it requires the BOP to assure that a prisoner spends the last part of his sentence under pre-release conditions only if practicable. However, a qualified obligation differs from a grant of discretion. Under § 3624(c), the BOP *must* ensure placement under pre-release conditions except where no such placement is practicable.

Goldings, 2004 WL 2005625 at *5. We agree with the First Circuit that the word "shall" bestows a duty on the BOP. To adopt the government's view that the section

---

2004).

merely limits the more general grant of authority in 18 U.S.C. § 3621(b) would be to ignore the obligatory nature of the word "shall."

We emphasize, like the First Circuit, that 18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP must formulate a plan of pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. Likewise, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

## Conclusion

We hold, on the facts of this case, in which both parties agree that CCCs are places of imprisonment for the purposes of 18 U.S.C. § 3621(b), that § 3621(b) gives the BOP the discretion to transfer prisoners to CCCs at any time during their incarceration. Further, the BOP is required to place prisoners in "conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable. This duty shall not extend beyond the last six months of the prisoner's sentence.

We reverse the judgment of the district court and remand for proceedings consistent with this opinion.

RILEY, Circuit Judge, dissenting.

I respectfully dissent.

According to section 3621(b), the Bureau of Prisons (BOP) is required to "designate the place of the prisoner's imprisonment. The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP]," and may transfer an inmate "at any time." 18 U.S.C. § 3621(b). Under section 3624(c), the BOP's placement of an inmate in a Community Corrections Center (CCC) (or other establishment meant to facilitate the inmate's reentry into society) before the completion of the inmate's term of imprisonment is limited to "a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served." 18 U.S.C. § 3624(c).

Any inconsistency between sections 3621(b) and 3624(c) can be reconciled by applying two canons of statutory construction. The first canon mandates specific statutory provisions govern over more general provisions. Varity Corp. v. Howe, 516 U.S. 489, 511 (1996). The Supreme Court interprets the canon, "the specific governs the general," as providing "a warning against applying a general provision when doing so would undermine limitations created by a more specific provision." Id. Section 3621(b) delegates broad authority to the BOP to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). Section 3624(c), on the other hand, is narrower, specifically capping at six months the amount of time an inmate may be placed in a CCC (or other transitional facility) at the end of his term of imprisonment. 18 U.S.C. § 3624(c).

The second canon applicable here is courts must be "reluctan[t] to treat statutory terms as surplusage." Babbitt v. Sweet Home Chapter, Cmtys. for Great Ore., 515 U.S. 687, 698 (1995). "It is our duty 'to give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section." United

States v. Menasche, 348 U.S. 528, 538-539 (1955) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)).  By reading the two sections together to permit the BOP to begin to transition inmates at any time during their imprisonment, the majority eviscerates both the specific limitations set forth in section 3624(c) and Congress's express intention to limit the amount of time permitted for CCC placement at the conclusion of an inmate's term.

A plain reading of the two statutes in conjunction with each other permits compliance with the two cited canons.  The specific ten percent/six-month limitations contained in section 3624(c) expressly restrict the BOP's broad grant of general authority and discretion conferred under section 3621(b).  See, e.g., Galizia v. Fed. Bureau of Prisons, No. 04 Civ. 5777(RCC), 2004 WL 1900350, at *3 (S.D.N.Y. Aug. 25, 2004); Skelsky v. Deboo, No. Civ.A. 3:04CV986CFD, 2004 WL 1897023, at *3 (D. Conn. Aug. 16, 2004); Loeffler v. Menifee, 326 F. Supp. 2d 454, 461-62 (S.D.N.Y. 2004); Cohn v. Fed. Bureau of Prisons, 302 F. Supp. 2d 267, 273 (S.D.N.Y. 2004); Adler v. Menifee, 293 F. Supp. 2d 363, 368-69 (S.D.N.Y. 2003); accord Crapanzano v. Menifee, No. 04 Civ. 1052(SAS), 2004 WL 736860, at *2 n.5 (S.D.N.Y. Apr. 5, 2004) (agreeing section 3624(c) expressly restricts broad grant of authority in section 3621(b), but concluding change in BOP policy violates the Administrative Procedures Act and Ex Post Facto Clause).

Under section 3621(b), therefore, the BOP generally may place an inmate in any penal or correctional facility at any time, subject, however, to the specific time limitations set forth in section 3624(c).  Without rendering meaningless any terms in either statute, this interpretation utilizes the language contained in both statutes, and specifically gives life to section 3624(c)'s limitations on placements in transitional facilities at the end of an inmate's term.  Such an interpretation further complies with the canon, "the specific governs the general."  Conversely, the majority opinion's interpretation ignores the limitations "not to exceed six months" and "of the last 10

per centum," rendering the terms mere "surplusage" in violation of both canons of statutory construction.

I agree with the majority's conclusion that section 3624(c) places an affirmative duty on the BOP to facilitate the transition of inmates out of the prison system at the conclusion of their sentence. Section 3624(c), the more specific statute, evinces a dual Congressional intent–an intent to place a limit on section 3621(b)'s broad grant of authority, and an intent to mandate efforts are made to ease an inmate's transition back into society, which transition is "not to exceed six months." My disagreement is with the majority's decision to disregard the specific limitations set forth in section 3624(c), notwithstanding Congress's use of the phrase "a reasonable part" in modifying the limitations. The majority concludes section 3621(b) permits the BOP to transfer an inmate to a CCC for more than six months. Section 3624(c), while mandating the BOP allow an inmate the opportunity to transition into the community at the conclusion of his imprisonment, also states such placement must be for "a reasonable part" of the last ten percent of the term of imprisonment, but such placement is "not to exceed six months." Congress gave the BOP some discretion in interpreting what "a reasonable part" of that time will be. However, as made clear in section 3624(c), that discretion ends at a maximum of six months.

Practical application of the majority's decision would permit inmates being assigned to CCCs for years or for the entire term of imprisonment. May the BOP decide a federal inmate serving a twenty-year or even fifty-year sentence will be placed in a CCC for ten years or for the entire imprisonment term? According to the majority, such a decision would rationally implement sections 3621(b) and 3624(c), notwithstanding section 3624(c)'s express six-month limitation.

The majority's interpretation eviscerates section 3624(c) in a judicial effort to expand the possible CCC time.  I prefer to follow the language of Congress in its entirety.  Therefore, I dissent.

_____