UNITED STATES of America,
Plaintiff/Respondent,

v.

Robert T. PAIGE, Defendant/Movant.

Nos. CR 04–007–M–DWM,
CV 04–247–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

April 22, 2005.

Kris A. McLean, Missoula, MT, for Plaintiff/Respondent.

John Rhodes, Missoula, MT, for Defendant/Movant.

## ORDER

On December 22, 2004, Defendant Paige filed the Court's standard form for motions to vacate, set aside, or correct the sentence, pursuant to 28 U.S.C. § 2255, except that he typed in "and § 2241" at the top of the first page. Paige is a federal prisoner proceeding with counsel.

On January 18, 2005, based on cases cited by Paige in his motion, the Court ordered the United States to file an Answer. After an extension of time was granted, the United States filed its Answer on February 28, 2005 in which it raised as defenses Defendant's alleged failure to exhaust administrative remedies and a change in the Bureau of Prisons' ("BOP") policy on this issue.[1] On March 7, 2005, the Court issued an Order requiring the United States to submit an affidavit from a duly qualified affiant regarding Paige's exhaustion of administrative remedies and allowing Paige to reply to Defendant's Answer with regard to the change in the BOP's policy. The parties now having submitted their respective filings, this matter is now ready for decision.

---

**1.** The Answer refers to "state remedies." The Rules Governing Section 2255 Proceedings for the United States District Courts do not refer to state remedies. Although the Rules

## I. Paige's Allegations

Paige's supervised release was revoked on November 30, 2004. He was sentenced to nine months' imprisonment, and the Court strongly recommended placement at the pre-release center in Butte, Montana. (Docket No. 18–Judgment at p. 2). Paige asserted at the revocation hearing that the Bureau of Prisons might not follow the Court's recommendation. (Docket No. 19–Defendant's Motion at p. 6, ¶ 13).

Paige now argues that a policy implemented by the Bureau of Prisons in 2002 precludes his placement at a pre-release center. (Docket No. 19–Motion at p. 5, ¶ 12A). He asserts that the Bureau's interpretation of the governing statutory scheme is "unlawful" and thwarts this Court's intended sentence. In support of his motion, he presents two memoranda. One is written on Bureau of Prisons letterhead, directed to "Chief Executive Officers" and dated December 20, 2002. The other is a memorandum on the letterhead of the Department of Justice's Office of Legal Counsel, is signed by M. Edward Whelan III, Principal Deputy Assistant Attorney General, is directed to Larry D. Thompson, Deputy Attorney General, and is dated December 13, 2002.

For his remedy, Paige seeks a stay of sentence and resentencing. *Id.*

## II. Analysis

### A. *Section 2255 vs. Section 2241*

██ Before addressing the merits of Paige's grounds for relief, a discussion regarding the distinction between § 2241 petitions and § 2255 motions is necessary. In general, a criminal defendant seeking to contest the legality of a sentence must

---

Governing Section 2254 Cases in the United States District Courts refer to state remedies, those rules do not apply here.

proceed via a § 2255 motion. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). On the other hand, a federal criminal defendant seeking to challenge the manner, location, or conditions of a sentence's execution must proceed with a petition for habeas corpus, brought pursuant to § 2241, in the court that has jurisdiction over the prison in which he is incarcerated. *Id.*

Here, Paige is not contesting the sentence imposed by the Court. By Paige's own admission, the Court was aware, at the time of sentencing, that the Bureau of Prisons might not follow its recommendation that Paige be placed in a pre-release center. Consequently, Paige can point to no legal error in his sentence.

Instead, Paige is challenging the execution of his sentence. (i.e., the BOP's decision not to follow the Community Corrections Center ("CCC") placement recommendation) and his motion must be considered a petition brought under 28 U.S.C. § 2241.

## B. *Exhaustion of Remedies*

 Construing Paige's motion as a Petition pursuant to 28 U.S.C. § 2241, the Court must first ask whether Paige has exhausted his administrative remedies. It is well settled that federal prisoners must exhaust their federal administrative remedies prior to filing a habeas corpus petition under § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986); *see also Fendler v. United States Parole Com'n*, 774 F.2d 975, 979 (9th Cir.1985). The exhaustion requirement is not, however, jurisdictional in § 2241 cases. *Rivera v. Ashcroft*, 394 F.3d 1129, 1139 (9th Cir.2005). Rather, "[e]xhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." *United Farm Workers of America v. Ariz. Agr. Emp. Rel. Bd.*, 669 F.2d 1249, 1253 (9th Cir.1982) (citation omitted); *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir.1993) (exhaustion waived where request for administrative remedy initially denied by Community Corrections Office based upon official BOP policy and further appeal would almost certainly have been denied based upon the same policy). Paige argues that exhaustion of administrative remedies should be excused. The Court agrees. First, by the time Paige exhausted every available administrative remedy, he would almost be done if not done with serving his entire sentence.[2] Exhaustion is not required when the petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies. See *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n. 4 (9th Cir.1981) ("exceptions to the general rule requiring exhaustion cover situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.").

---

2. According to the BOP website, Petitioner's projected release date is July 30, 2005. Even if he were to attempt to exhaust his administrative remedies the BOP would have sufficient response time to take up the vast majority of Petitioner's remaining nine month sentence. As provided in 28 C.F.R. §§ 542, upon receipt of a formal written Administrative Remedy Request, the Warden or Community Corrections Manager has 20 days to respond. The inmate then has 20 more dates to appeal to the Regional Director, who has 30 days to respond. If still dissatisfied, the inmate may appeal to General Counsel within an additional 30 days, to which the General Counsel has 40 days to respond. *See* 28 C.F.R. §§ 542.

In addition, it appears clear that Paige's claim will be rejected based upon an official BOP policy. The BOP policy at issue is the result of a directive from the Department of Justice which the BOP would unlikely change even if they had the power to do so. Moreover, as Paige points out, the government in a case out of the Eighth Circuit conceded that the "use of the grievance procedure to contest the validity of the BOP's policy would be futile." *Elwood v. Jeter*, 386 F.3d 842, 843, n. 1 (8th Cir. 2004); *see also Drew v. Menifee*, 2005 WL 525449 (S.D.N.Y.2005); *Pinto v. Menifee*, 2004 WL 3019760, *3 (S.D.N.Y. Dec.29, 2004); *Terry v. Menifee*, 2004 WL 2434978, *2 (S.D.N.Y. Nov.1, 2004).

In not conceding futility, the Government here argues that the BOP recently changed its policy which includes "circumstances under which the Bureau of Prison will make exceptions to the general rule." (Docket No. 24–Response to § 2255 Motion, p. 3). However, the prior rule (under which the *Elwood* decision was made) allowed for similar statutory exceptions. (Docket No. 19–exhibit to Petition entitled "Memorandum for Chief Executive Officers, p. 2)". Moreover, as Paige responds, the new policy still states that no one will be sent to a CCC unless required by statutory law and there is no statute requiring that Mr. Paige be placed at a CCC. As no exceptions apply to Mr. Paige, the BOP policy appears firmly set, and time is of the essence, exhaustion is excused.

### C. Relief on the Merits

■ Petitioner's claims arise from a change in the BOP's interpretation of 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621(b) provides:

(b) Place of imprisonment.—The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habit-ability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another . . .

18 U.S.C. § 3621. Section 3624(c) provides:

(c) Pre-release custody.—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable,

offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624. Prior to December 2002, the BOP interpreted these statutes to allow inmates to serve any or all of their terms of imprisonment in CCCs. Pursuant to the pre-December 2002 policy, "the BOP interpreted Section 3621(b) as taking precedence over Section 3624(c) and as including community confinement centers ('CCCs'), or half-way houses, within the definition of 'penal or correctional facil-it[ies].'" *Drew v. Menifee,* 2005 WL 525449 (S.D.N.Y. March 4, 2005). The December 20, 2002 policy changed the BOP's interpretation of these statutes and read § 3624(c) as a limit on the discretion granted by § 3621(b). Thus, after December 20, 2002, an inmate could be designated to a CCC only in connection with pre-release programming for the lesser of six months or ten percent of the inmate's sentence.[3]

The December 2002 change in policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months. *See Pinto v. Menifee,* 2004 WL 3019760 (S.D.N.Y. Dec. 29, 2004) (summarizing the current legal landscape). As noted therein, two circuit courts have addressed the merits of the December 2002 policy change, both invalidating the new policy on the grounds that BOP's interpretation of the statutes is erroneous. *See Elwood v. Jeter,* 386 F.3d 842, 846–47 (8th Cir.2004) (holding BOP had discretion to transfer prisoners to community confinement at any time during their incarcer-

ation); *Goldings v. Winn,* 383 F.3d 17, 23–27 (1st Cir.2004) (holding that § 3624(c) does not prohibit the BOP from transferring prisoners to a CCC prior to the lesser of six months or ten percent of the end of their prison terms, and that § 3621(b) confers upon BOP discretionary authority to execute such transfers). To date, the Ninth Circuit Court of Appeals has not addressed the merits of the policy changes.

While this action was pending, the BOP finalized an amendment to 28 C.F.R. Part 570. Effective February 14, 2005, 28 C.F.R. § 570.20 provides:

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

A companion rule, 28 C.F.R. § 570.21, provides:

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months. (b) We may exceed these time-frames only when specific Bureau programs allow greater periods

---

3. The policy change was based in large part on the Office of Legal Counsel's determination that a CCC is not a "place ... of imprisonment" as required by the first sentence of § 3621(b). This determination was in turn based upon language contained in § 5C1.1 of the United States Sentencing Guidelines, interpreted by courts to exclude CCCs as a

"place of imprisonment." It is possible that the Supreme Court's recent case holding mandatory application of the Sentencing Guidelines unconstitutional might vitiate the underlying basis for the policy and rule change. *See United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 759, 160 L.Ed.2d 621 (2005).

of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. §§ 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. §§ 4046(c))).

Paige cites to *Drew v. Menifee*, 2005 WL 525449 (S.D.N.Y. March 4, 2005), one of the few cases which has examined the legality of the new BOP regulations, 28 C.F.R. §§§§ 570.20 and 570.21. *Drew* examined the statutes and legislative history at issue and points out that the BOP's new 2–14–05 Rule either assumes or acknowledges that the BOP has discretion to designate an inmate to a CCC at any point in their sentence. The *Drew* Court then concluded that the new regulations fail "because the BOP has not exercised its discretion on the basis of the factors set forth in Section 3621(b)." *Id.* at *4. As the court explained,

> The principal problem with the 2–14–05 Rule is that it does not consider any of the factors that the BOP, in the words of the Senate Committee on the Judiciary, "is specifically required" to consider. With respect to the possibility of placement in a CCC prior to the last ten per cent or six months of the prisoner's sentence, the [new] Rule simply posits a uniform rule that entirely ignores Section 3621(b)'s command. No consideration is given to the prisoner's offense of conviction, the prisoner's history and characteristics or any of the other factors identified in the statute.

*Id.* at *4

This Court agrees with *Drew* that the BOP's failure to consider the § 3621(b) factors in its new policy violates Congressional intent and is an unreasonable interpretation of the statutes at issue.

The Government argues that *Lopez v. Davis*, 531 U.S. 230, 244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) authorizes the BOP to utilize its discretion, through its adminis-

trative powers, and refuse to place Paige in a community correctional facility. This Court agrees that the BOP can exercise its discretion in a categorical manner through its rule-making power as discussed in *Lopez*. However, the Administrative Procedure Act (APA) governs review of the BOP's action, conclusions, and findings of fact. 5 U.S.C. § 702. The Court must set aside the BOP's actions, findings, or conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A). In this review, the Court must ask whether the Bureau's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Ocean Advocates v. U.S. Army Corps. of Engineers*, 402 F.3d 846 (9th Cir.2005) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The Bureau's exercise of discretion in promulgating the new rule regarding placement at CCCs must be guided by the factors Congress has identified under § 3621(b). Thus, while the BOP does have the discretion to refuse to place Paige in a community correctional facility, that discretion must be based at least in part on the § 3621(b) factors. The BOP's 2–14–05 rule ignores those factors.

The failure of the BOP to consider the § 3621(b) factors is particularly troublesome in Mr. Paige's case as his underlying offense is a failure to pay child support. The Court strongly recommended that Paige serve his term of incarceration community confinement at the Butte, Montana Prerelease Center. There, Mr. Paige may have actually been able to work toward paying his child support obligations. This is not the case at his current place of incarceration at the medium security Fed-

eral Correctional Institution in Florence, Colorado. This court agrees that both the December 2002 policy and the new BOP regulations are invalid. Under § 3621(b) and § 3624(c), the BOP is obligated to facilitate a prisoner's transition from the prison system, and must exercise discretion in formulating a plan of pre-release conditions, which *may* include CCC placement.

The courts granting relief from application of the new policy and/or new regulations uniformly agree an inmate's immediate designation to a CCC is not mandated. *See, e.g., Drew,* 2005 WL 525449 at *6; *Pinto,* 2004 WL 3019760 at *14; *Elwood,* 386 F.3d at 847; *Knish v. Stine,* 347 F.Supp.2d 682 (D.Minn. Nov.24, 2004). Thus, a stay of sentence and resentencing as requested by Paige is not necessary. Instead, the proper remedy is to order the BOP to consider the appropriateness of transferring Paige to a community confinement center in light of the factors set forth in § 3621(b) and other factors deemed appropriate by the BOP, without reference to either the December 2002 policy or 28 C.F.R. § 570.21. *Id.*

Accordingly, **IT IS HEREBY ORDERED** as follows:

The Petition for Writ of Habeas Corpus is **GRANTED,** and the BOP is **ORDERED** to consider the appropriateness of transferring Robert T. Paige to a community confinement center such as the Butte, Montana Prerelease Center in light of the factors set forth in § 3621(b) and any additional factors deemed appropriate by the BOP, without reference to the BOP policy promulgated in December 2002 and without reference to the BOP's February 14, 2005, amendment to 28 C.F.R. § 570.21. The Bureau of Prisons is to make this determination promptly, and, in no event, later than 14 days from the date of this Order. In the event the Bureau of Prisons has not informed the Court in writing of its determination within 14 days of the date of this Order, the warden of the Federal Correctional Institution in Florence, Colorado is instructed to deliver Paige to Missoula, Montana no later than May 20, 2005. Failure to deliver Paige as required will be considered grounds to hold the warden in contempt of court.

The Clerk of Court shall terminate all pending motions in the criminal case and in CV 04–07–M–DWM and shall close the civil file.