

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2005

# Miller v. Fed Bur Prisons

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Miller v. Fed Bur Prisons" (2005). *2005 Decisions.* Paper 535.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/535

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1654

———

DAVID MILLER

*Appellant*

v.

FEDERAL BUREAU OF PRISONS; HARLEY G. LAPPIN, in
his official capacity as director of the Federal Bureau of Prisons;
WARDEN JOHN NASH, in his official capacity as warden of
Federal Correctional Institution-Fort Dix, New Jersey

———

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 1:04-cv-06286)
District Judge: Honorable Freda L. Wolfson

———

Submitted Under Third Circuit L.A.R. 34.1(a)
June 14, 2005

———

No. 05-1083

———

STEVEN SICHEL

*Appellant*

v.

HARLEY G. LAPPIN, in his official capacity as director of the
Federal Bureau of Prisons; WARDEN JOHN NASH, in his

official capacity as warden of Federal Correctional Institution;
THE FEDERAL BUREAU OF PRISONS

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 04-cv-05271)
District Judge: Honorable Freda L. Wolfson

Submitted Under Third Circuit L.A.R. 34.1(a)
June 14, 2005

Before: ALITO, SMITH, and BECKER, *Circuit Judges*

(Filed:   September 16, 2005)

OPINION

BECKER, *Circuit Judge*.

David Miller appeals from an order of the District Court denying

his petition for a Writ of Habeas Corpus. In his pro se petition, Miller

challenges the legality of a 2002 Bureau of Prison ("BOP") policy

change that limited the time a prisoner may be placed in a Community

Corrections Center ("CCC") to the lesser of six months or ten percent of

the prisoner's total sentence.[1] This appeal presents the question whether

the BOP's CCC placement policy is consistent with its statutory grant of

---

[1] In light of Steven Sichel's recent release from incarceration, his
appeal, docketed at No. 05-1083, is moot.

2

authority. Because we hold that the policy is contrary to the plain language of 18 U.S.C. § 3624(c), we will vacate the order of the District Court denying Miller's petition and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

Miller is incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey, serving a 13-month sentence imposed by the District Court for the Eastern District of Pennsylvania. On December 13, 2004, Miller was notified by the BOP that his projected release date was October 24, 2005. He was also informed that he would be eligible for pre-release placement at a CCC on September 23, 2005. He would therefore spend approximately one month, or not quite ten percent of his total sentence, at a CCC. Given the BOP's previous practice of placing certain offenders in CCCs for six months or longer, Miller requested such placement for the last six months of his sentence. He claims that he received no response to his request.

Miller then challenged the BOP's placement decision by filing a petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, in the District Court for the District of New Jersey, where he was incarcerated. Miller claimed that the new BOP policy limiting his time in a CCC to the lesser of six months or ten percent of his sentence was based on an erroneous interpretation of two statutory provisions of the

Sentencing Reform Act of 1984 – 18 U.S.C. §§ 3621(b) and 3624(c).

The District Court summarily denied the petition without requesting an answer from the Government, finding that the BOP "did not violate federal law by limiting [Miller's] eligibility for transitional placement."

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact. *See Ruggiano v. Reish*, 307 F.3d 121, 126 (3d Cir. 2002).[2]

---

2The Government contends that the District Court lacked jurisdiction to consider Miller's § 2241 petition because Miller is contesting the "conditions of [his] confinement" rather than the fact or duration of his sentence. Therefore, it claims, habeas corpus does not lie. (Appellee's Br. at 1.) While resolution of this issue is far from clear, we are satisfied, if barely, that Miller presents a proper habeas claim.

The Government relies primarily on *Leamer v. Fauver*, 288 F.3d 532 (3d. Cir. 2002), and related cases for the proposition that jurisdiction here is not proper. *Leamer* concluded that § 1983 relief is unavailable "whenever the challenge ultimately attacks the 'core of habeas' – the validity of the continued conviction or the fact or length of a sentence." *Id.* at 542. However, *Leamer* focuses on whether a prisoner has the option of bringing a civil rights action as opposed to a habeas petition. It does not conclusively determine when a prisoner is *precluded* from filing a habeas petition. Moreover, *Leamer* acknowledges that there are cases at the intersection of § 1983 and habeas. *Id.* at 543-44.

In contrast, we have held that § 2241 allows a federal prisoner to challenge the "execution" of his sentence in habeas. *See United States v. Eakman*, 378 F.3d 294 (3d Cir. 2004); *Coady v. Vaughn*, 251 F.3d 480, 485 (3d. Cir. 2001). In *Coady*, we observed that § 2255 is limited to challenges to the validity of a sentence while § 2241 is the only statute conferring habeas jurisdiction to "hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." 251 F.3d at 485. We added that "we are not unmindful of the cases which hold that *federal* prisoners challenging some aspect of the execution of their sentence, such as denial of parole, may proceed under Section 2241." *Id.* Other circuits have also held that prisoners

4

II. Bureau of Prison Policy and the Relevant Statutory Provisions

Before the policy change that is the subject of this dispute, the BOP generally considered prisoners for CCC placement for up to six months at the end of their sentences, regardless of the total sentence length. "These practices were entirely routine, and were all but taken for granted by all participants: the BOP, the Probation Office, the U.S. Attorney's Office, the defense bar, and the judiciary." *United States v. Serpa*, 251 F.Supp. 2d 988, 990 (D. Mass. 2003) (citation omitted). However, on December 13, 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a memorandum that concluded that the BOP's

_____

challenging the location and manner of their detention may proceed under § 2241. *See Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) ("In a § 2241 petition a prisoner may seek relief from such things as . . . the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, *the type of detention, and prison conditions in the facility where he is incarcerated*.") (emphasis added); *Hernandez v. Campbell*, 204 F.3d 861, 864-65 (9th Cir. 2000) ("Generally, motions to contest the legality of a sentence must be filed under § 2255 . . . while petitions that challenge the manner, *location, or conditions* of a sentence's execution must be brought pursuant to § 2241 . . . .") (emphasis added). In a case with facts similar to those presented by Miller, the Sixth Circuit held that a challenge to a prisoner's "place of imprisonment" was proper under § 2241, not §2255, because it questioned the way the "sentence was being executed." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991).

The caselaw is opaque as to the precise meaning of "execution of sentence." Given the procedural posture of this case – Miller is about to be released – we do not have the luxury of explaining in depth its meaning here. In light of *Coady*, *Eakman*, *Admans*, *Hernandez,* and *Jalili*, we are satisfied that what is challenged here is the execution of Miller's sentence. Hence, we find habeas corpus jurisdiction proper.

longstanding practice of placing certain prisoners in CCCs for all or long parts of their sentences was contrary to the BOP's statutory grant of authority and that such placements should be limited to a maximum of ten percent of an offender's sentence, to be capped at six months.[3] On December 20, 2002, the BOP followed the OLC's advice and memorialized it.[4]

This appeal turns on the interpretation of two statutes. The BOP is vested with authority under 18 U.S.C. § 3621(b) to determine the location of an inmate's imprisonment:

> (b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable . . . . The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

A more specific provision, 18 U.S.C. § 3624(c), describes the BOP's obligation to prepare prisoners for community re-entry by, for example,

---

[3] The 2002 OLC memo considered all community confinement facilities – including community confinement centers and halfway houses – as indistinguishable for purposes of this question. We accept that understanding here.

[4] We note our awareness that the BOP has recently revised its regulations governing CCC placement. Because those regulations became effective February 14, 2005, after Sichel and Miller's CCC determinations were made, they do not govern here, and we express no opinion about them.

placing them in a CCC:

> (c) Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

The 2002 memo, which was adopted by the BOP, concluded that the BOP did not have "general authority" under § 3621 to place an offender in community confinement from the outset of his sentence or at any time the BOP chooses. Instead, the memo reasoned that authority to transfer a prisoner to a CCC is derived solely from § 3624, which limits residence in a CCC to the lesser of 10 percent of the total sentence or six months.

In denying Miller's petition challenging the BOP policy, the District Court found that the BOP did indeed have discretion under § 3621(b) to place a prisoner in a CCC at any time. However, the Court further ruled that § 3624(c) limits that discretion to the last ten percent of the sentence, not to exceed six months. It upheld the BOP's interpretation of § 3624(c) – and therefore Miller's pre-release date – as a "permissible construction of the statute."

### III. Discussion

At issue in this appeal is whether the District Court was correct

7

in endorsing the BOP's interpretation. Specifically, we must decide whether the BOP may, under § 3624(c), transfer an inmate to a CCC prior to the last ten percent or six months of his total sentence. While we have acknowledged the BOP's interpretation, *see United States v. Eakman*, 378 F.3d 294, 301 (3d Cir. 2004), we have not yet considered its validity in a precedential opinion.

Both courts of appeals to address the question have rejected the BOP's interpretation as inconsistent with the relevant statutory provisions. *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004). In *Elwood*, the new BOP policy limited a prisoner's placement in a CCC to the last four months of his sentence. Under the old policy, he would have been eligible for a full six months. The Eighth Circuit rejected the BOP's new interpretation, holding that § 3624(c) was a specific mandate that did not interfere with the BOP's general discretion to place Elwood in a CCC. *See Elwood*, 386 F.3d at 847. Similarly, the First Circuit held that the BOP's discretionary authority was not subject to the temporal limitations of § 3624(c). *See Goldings*, 383 F.3d at 29.[5]

---

[5] Miller requested that he be placed in a CCC for a total of six months. He does not argue that the BOP should have considered a placement of more than six months. We note, however, that the Eighth and First Circuits held that the BOP has discretion to transfer a prisoner to a CCC at "any time" during incarceration. *Elwood*, 386 F.3d at 847; *Goldings*, 383 F.3d at 28.

In the view of both the First and Eighth Circuits, the time constraints of § 3624(c) limit only the affirmative obligation of the BOP, not the agency's discretion to place a prisoner in a CCC for a longer period of time. Miller of course cites *Elwood* and *Goldings* for the proposition that the BOP may transfer prisoners to CCCs at any time during their incarceration. In contrast, the Government argues that the current BOP policy is a correct interpretation of the two statutes. Although it concedes that the BOP has discretion under § 3621(b) to place an inmate in a CCC at any time during a sentence (Appellee's Br. at 20), it interprets § 3624(c) as a limit on the BOP's general authority:

> [O]ne computes the 10% of the term of imprisonment, but no matter how long that 10% period, the statute caps pre-release custody at six months. Therefore, prisoners serving long sentences may not exceed the six months for pre-release custody. Prisoners with shorter sentences, like petitioners here, would be limited by the 10% calculation.

(Appellee's Br. at 22)

We agree with Miller's interpretation and that of the First and Eighth Circuits. Section 3621 requires the BOP to designate the location of a prisoner's incarceration. It gives the BOP discretion to choose a "place of imprisonment" from among "any available penal or correctional facility" that meets applicable standards. No type of facility is expressly excluded. We believe that if Congress had intended to exclude CCC placement, it would not have delegated full authority to

9

place a prisoner in any available facility. Because both parties here concede that a CCC may be a "place of imprisonment," we assume that transfer to a CCC is within the BOP's broad powers under § 3621(b). The remaining question is whether the language of § 3624(c) to determine if that statute specifically limits the BOP's discretion to place prisoners in a CCC.

The plain language of § 3624(c) mandates that the BOP "shall" assure that a prisoner is considered for appropriate pre-release focused on re-entry. The use of the word "shall" indicates that the statute is concerned not with constraining the BOP's placement discretion, but with imposing an affirmative obligation on the BOP. The Supreme Court has articulated the mandatory nature of the word "shall." *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) ("The Supreme Court . . . [has] made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty . . . ."). Recently, the Court noted the obvious distinction in § 3621 between the use of "may," which is permissive, and the use of "shall," which creates "discretionless obligations." *Lopez v. Davis*, 531 U.S. 230, 240-41 (U.S. 2001).

The discretionless obligation imposed by § 3624(c) here reflects Congress' desire to ensure that prisoners are given ample time to readjust to community living before they are fully released. Serving as an

alternative to traditional parole, CCCs provide an important "transitional period." *Bailor v. Salvation Army*, 854 F. Supp. 1341, 1364 (N.D. Ind. 1994). While § 3621(b) allows the BOP to *consider* ordering a CCC transfer, only § 3624(c) *ensures* that such a transfer, when appropriate, will actually take place. Thus, the time constraints in § 3624(c) limit only the obligation of the BOP to consider placing prisoners in CCCs or similar facilities. They do not limit the agency's discretion to place prisoners in such facilities for longer periods of time. Using this reasoning, the two statutes at issue are easily harmonized.[6]

## V. The Remedy

Summarizing, we hold that under §§ 3621(b) and 3624(c), the BOP has the *discretion* to transfer an inmate to a CCC or like facility for more than ten percent of his sentence, but *must*, if practicable, transfer an inmate for a reasonable part of the last ten percent of the sentence, not to exceed six months. The BOP's discretion under § 3621(b) is not subject to the temporal limitations of the BOP's mandate in § 3624(c). We will therefore vacate the order of the District Court and remand for further proceedings consistent with this opinion.

---

6As the First and Eighth Circuits point out, the BOP's obligation under § 3624(c) is qualified. *Elwood*, 386 F.3d at 846; *Goldings*, 383 F.3d at 23. The BOP must assure that a prisoner spends the final portion of his sentence under applicable pre-release conditions only to the extent "practicable." We have no occasion here to construe the import of this provision.

However, as noted above, Miller is scheduled to be released shortly, which likely will, if the release transpires, moot the case. Accordingly, we will order that the mandate shall issue forthwith and immediately be transmitted to the District Court and to the parties. It seems unlikely that the District Court will be able to convene a hearing, much less take judicial action, before Miller's release date. That is unfortunate but was, in terms of granting meaningful relief to Miller, inevitable. Because of the short sentence, the necessity of securing the views of the Government (the District Court disposed of the case without soliciting the views of the Government), and the time necessary to study and opine on these complicated issues, the likelihood of Miller getting an earlier transfer to a CCC was always minimal. Perhaps this opinion, albeit styled as non-precedential, will be of value to other panels considering this oft-recurring question.